OPINION OF THE COURT
Edward J. Greenfield, J.
When Mark Twain’s obituary was erroneously published, he is reported to have commented with a chuckle: “The reports of my death are greatly exaggerated.”
When the New York Post and the New York Daily News published an obituary notice for David Rubinstein, aged 37, who was alive and well and living in Brooklyn, Mr. Rubinstein was not amused. Indeed, he claims that he was mortified, and not only did he demand a retraction, but claiming to have “sustained severe and painful injuries, both internal and external, and suffered severe mental and nervous shock and mental anguish as a result thereof” and that he has become “incapacitated from her [sic] usual vocation and avocation”, he brought suit against the Post and the News, seeking damages of $750,000 against each of them. In addition, his father and his wife are each suing for $750,000 for their injuries and mental anguish. The wife, too, alleges that she was “incapacitated from his [sic] usual vocation and avocation” and was rendered “sick, sore, lame and disabled”, incurring hospital and other expenses. David and Barbara Rubinstein sue for another $100,000 each for loss of the consortium and affection and services of the other.
The defendant New York Post moved to dismiss the complaint for failure to state a cause of action. On the return date, there being no response from plaintiffs, the motion was granted by default. Plaintiffs now move to vacate the default and to stay execution on the judgment which has been entered.
CPLR 5015 (a) (1) permits the court to relieve a party from a judgment or order on grounds of excusable default, but that power is discretionary. Inadvertence and law office failure may now be considered as proper grounds for exercising discretion in opening up a default. CPLR 2005 (as added by L 1983, ch 318), liberalized the rule of Barasch v Micucci (49 NY2d 594) to that extent. The explanation of plaintiffs that answering papers and a memorandum of law had been prepared but were not picked up by the lawyers’ service representative is a sufficient showing of excusable default.
*3 However, before a court exercises its discretion to reopen a matter, it must also be satisfied that vacatur is not a futile gesture, and that a meritorious cause of action or defense can be demonstrated. (Barasch v Micucci, supra, p 599; American Tel. Syndication Co. v La Marca Group, 97 AD2d 372; Clarke v Clarke, 75 AD2d 836.) That, the plaintiffs have failed to do.
Plaintiffs are not claiming that the publication of the obituary libeled David Rubinstein and his family. Certainly, there are worse things that can be said about a person than that he is deceased. Indeed, respect and admiration for an individual usually increases upon his demise, since the ancient imprecation “de mortuis nil nisi bonum” is generally applied. Abraham Lincoln spoke reverently of “these honored dead”. Death is an honorable estate, so that no one is demeaned or belittled by the report of his or her death. (Cohen v New York Times Co., 153 App Div 242; Curtin v Western Union Tel. Co., 13 App Div 253, 255; Cardiff v Brooklyn Eagle, 190 Misc 730.)
Possibly seeking to avoid the rigorous limitations which are to be applied in libel suits, plaintiffs alleged that the newspaper “negligently and carelessly published false information, and failed to publish a timely retraction”, thereby inflicting injuries on each of them. If a report of a death by a newspaper were to be considered defamatory, there could still be no recovery for mere hurt feelings or embarrassment or chagrin, for special damages would have to be alleged. (Gertz v Robert Welch, Inc., 418 US 323, 342; Salomone v MacMillan Pub. Co., 77 AD2d 501.)
If the newspaper report deals with a public figure or a matter of public interest, then it must be further established that the publication acted with “malice.” (New York Times Co. v Sullivan, 376 US 254, 279.) The Supreme Court has imposed burdens on a party suing a publication in order to protect 1st Amendment rights of free speech. A plaintiff cannot avoid the constitutional protections afforded to publications by alleging as an alternative theory “the negligent infliction of harm.” An allegation of mere negligence negates the Supreme Court’s malice requirement — it is the very antithesis. For a publication to be liable for a false news report, the false information must be promulgated, not negligently or as a result of misinformation, but with knowledge of its falsity or with reckless disregard of minimal standards for ascertaining truth. (St. Amant v Thompson, 390 US 727; Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 199.)
The publication of the names and obituaries of those who have just died is clearly a matter of public interest. It is plain that the *4 publication of false information through mistake, or, as appears to be the case here, as the result of some third person taking the trouble through malice or a warped sense of humor, to put in a paid death notice, cannot give rise to liability. When a death notice is called in (usually by a funeral director), it would be unreasonable to postulate a legal duty owed by the publication to the person reported deceased and his family. While some may undertake it, there is no legal obligation to check out the accuracy of a death notice by verifying with the grieving family that the person as to whom notice had been received was really and truly dead. In dealing with paid obituary notices, the possibilities of prank or error are so remote that independent verification need not be made in each case.
The complaint founders on another ground. The law does recognize a cause of action for intentional infliction of emotional harm (see, Murphy v American Home Prods. Corp., 58 NY2d 293; Matter of Cullen v Nassau County Civ. Serv. Commn., 53 NY2d 492; Halio v Lurie, 15 AD2d 668). It is somewhat akin to prima facie tort (the intentional infliction of temporal damage employing otherwise legal means without justification, the equivalent of “disinterested malevolence”). (Curiano v Suozzi; 63 NY2d 113, 117; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 333; American Bank & Trust Co. v Federal Bank, 256 US 350, 358.)
Emotional distress, injuries to one’s feelings, claims of humiliation or damaged pride, and psychic injuries can arise from a multiplicity of circumstances which are not ordinarily actionable. The Court of Appeals has limited the right of recovery at law for hurt feelings and emotional distress unconnected to physical trauma to:
(a) defamation and malicious prosecution;
(b) willful and outrageous humiliation intentionally inflicted by conduct exceeding all bounds usually tolerated by decent society. (Fischer v Maloney, 43 NY2d 553.)
(c) deliberate harassment.
These all arise out of intentional acts. While the law has recognized the right of recovery for the negligent infliction of emotional injury under unique circumstances, as in Battalia v State of New York (10 NY2d 237, where an infant was permitted to sue for alleged emotional and neurological disturbance as a result of negligence in operating a chair lift at a ski slope) and Ferrara v Galluchio (5 NY2d 16, mental anguish inflicted by false report of cancer), such recovery is circumscribed to unique facts where a special duty is owed. The newspaper here owed no *5 duty to any individual to transmit the proper information. As a newspaper of general circulation, its obligation, if any, was to inform its readers of the news, and no special relationship existed towards any particular reader. (Pressler v Dow Jones & Co., 88 AD2d 928; Sacco v Herald Statesman, 32 Misc 2d 739; Jaillet v Cashman, 115 Misc 383, affd 202 App Div 805, affd 235 NY 511.)
Recovery for emotional distress to third persons is even more limited. While in Lando v State of New York (39 NY2d 803), recovery was permitted for the emotional distress which arose as the result of negligent denial of access to a father of the body of his deceased daughter, and in the case most closely comparable to this, Johnson v State of New York (37 NY2d 378), a daughter was permitted to recover for her emotional harm as a result of misinformation given by the defendant hospital that her mother had died, when in fact, she did not, in both cases special duty was found owing. In Johnson, liability was based entirely on the duty said to be owing directly by the hospital to the plaintiff, as it had undertaken to inform her of her mother’s status. (See, Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277, 280.)
Since then, the Court of Appeals in Kennedy v McKesson Co. (58 NY2d 500); Bovsun v Sanperi (61 NY2d 219) and Johnson v Jamaica Hosp. (62 NY2d 523), has drawn an even more restrictive line as to the rights of third persons to recover for emotional distress for what had occurred to others. In Kennedy {supra), the court held that a third person could not recover for his emotional shock in having been the agency of another’s death from a defective instrumentality, there being no duty by the manufacturer to protect him from emotional injury in inflicting harm on others. In Bovsun (supra), the Court of Appeals restricted recovery for emotional injury to those members of the immediate family who actually witnessed an injury or death, but only if they themselves were within “the zone of danger.” In Johnson v Jamaica Hosp. (supra), the Court of Appeals held that parents could not recover for the emotional distress resulting from a hospital’s negligence in permitting their child to be abducted from a nursery. There the parents had a real basis for anguish and concern, while here the wife and father knew, despite the reports, that David was very much alive. The duty owing is thus seen as extremely limited. Thus, if a father cannot recover for his emotional distress and grief from a defendant who bludgeoned his daughter to death with a hammer (Garland v Herrin, 724 F2d 16), a fortiori, a father (or a wife) could not recover for emotional distress because of a publication mistakenly and incorrectly reporting a death.
*6 There being no basis in the law upon which either the person reported dead or his relatives can recover damages for the negligent infliction of emotional injuries, there would be no point in vacating the default and restoring an action which has no merit in the law. Both motions of the plaintiffs are denied.