Joseph MURRAY, and Joseph Murray as parent and natural guardian of Mary Margaret Murray, Cathleen M. Murray, Joseph F. Murray, and Megan E. Murray, infants under the age of 18 years, Plaintiffs,

Joseph Murray, Plaintiff-Appellant,

v.

XEROX CORPORATION, Defendant-Appellee.

No. 274, Docket 86–7554.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1986.

Decided Feb. 4, 1987.

Jeanne M. Colombo, Rochester, N.Y., for plaintiff-appellant.

Stevens L. Ingraham, Rochester, N.Y. (Harris, Beach, Wilcox, Rubin and Levey, Rochester, N.Y., of counsel), for defendant-appellee.

Before MANSFIELD,* MESKILL and MINER, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff Joseph Murray appeals from a judgment of the United States District Court for the Western District of New York, Telesca, J., following an order granting defendant Xerox Corporation's motion for summary judgment as to all claims and dismissing the complaint. Murray, a fourteen year employee of Xerox Corporation, brought this action in the district court alleging, under New York law, that Xerox made fraudulent and negligent misrepresentations concerning promotions and transfers within the company. Murray also alleged that he was the victim of employment discrimination on the bases of age, sex, race and Vietnam veteran's status. The district court found that Murray had failed to raise a genuine issue of material fact as to any of his claims.

On appeal, Murray argues that material issues of fact exist with respect to his common law claims of fraudulent and negligent misrepresentation. Murray also contends that summary judgment was improper as to his claims of employment discrimination. We conclude, however, that summary judgment was properly granted be-

---

* Judge Mansfield died on January 7, 1987. Judges Meskill and Miner have decided this appeal in accordance with § 0.14(b) of the Rules of this Court.

cause Murray failed to raise a genuine issue of material fact as to any of his theories for recovery. We affirm the district court's dismissal of Murray's complaint.

## BACKGROUND

For the purposes of this appeal we accept the factual allegations in the complaint as true. *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984). Plaintiff Joseph Murray began his employment career with Xerox Corporation in 1967. During a fourteen year period, Murray exhibited steady professional growth and development, starting as a grade 4 sales trainee in the mid-Ohio branch office and progressing to a grade 10 position as a High Volume Account Executive. In February 1979, Murray fully anticipated a promotion from grade 10 to a grade 11 managerial position. Based on performance evaluations, however, Murray's supervisor elected to transfer Murray to another grade 10 position with an increase in salary. Murray objected to this transfer and decided to invoke Xerox's open door policy to plead his case for promotion directly to the regional vice president.

As Murray prepared to board a plane for the meeting, Wade Cassidy, branch manager of the mid-Ohio office, and Lorin Powell, branch sales manager, intercepted Murray and requested that he postpone his flight. Cassidy and Powell, after extensive conversations with Murray at the airport, persuaded Murray to accept a transfer to Rochester, New York. The parties agreed that Murray would receive a grade 10 position in Sales Training and Development and, after completing two or three years of employment at Rochester, would be promoted to a managerial grade 11 position. This understanding was memorialized in a letter from Wade Cassidy to Jack Kelly, Murray's future supervisor, which read in pertinent part:

If you would set up the interviews as we agreed for the purpose of validating Joe for a Staff Position in either the Sold Program or Sales Training, I would be very grateful. Again, you have my commitment that we would absolutely take Joe back into Mid-Ohio as a National Account Manager or the Branch Supply Specialist after 2 or 3 years in Headquarters.

J. App. at 696. Apparently satisfied with the new arrangement, Murray sold his house in Ohio and moved his family to Rochester, New York. Murray never again attempted to invoke the open door policy offered by Xerox.

Upon his arrival in Rochester, Murray experienced conflicts with his new supervisor. Eventually he left Sales Training and Development to join the Financing Business Center. Murray's supervisors in the financing department, David Zirkle and James Burkey, promised to use their best efforts to secure Murray a promotion to grade 11 and prepared the necessary papers. In spite of their efforts, however, the promotion sought by Murray never materialized.

Murray finally requested a transfer back to the mid-Ohio office in the fall of 1980. In a letter to James Burkey, Murray expressed his deep dissatisfaction with the series of events in Rochester and with his treatment at the hands of Xerox management. Burkey, believing that the tone of the request was inappropriate, strongly recommended that Murray redraft the letter in more positive terms. Burkey also assured Murray of his best efforts to secure the transfer back to mid-Ohio if the letter was resubmitted. Murray followed Burkey's recommendation and submitted a revised letter requesting a transfer by December 1, 1980. As of January 1981, however, Murray had not been transferred to Ohio.

At the time of Murray's request for a transfer, Wade Cassidy was replaced by Michael Martone as branch manager of the mid-Ohio office as part of a nationwide Xerox reorganization. New positions were created in the mid-Ohio office as a consequence of the reorganization which Murray would have found suitable. However, because of the delay in his transfer applica-

tion, these positions were filled by other Xerox employees before Martone became aware of Murray's desire for a transfer. Martone expressly refused to honor Cassidy's promise for promotion, citing the lack of vacancies in his staff, but did agree to create a special grade 10 position for Murray in which he would report directly to Martone as branch manager. Although Murray was to receive his former grade 10 salary in the new position, the personnel department classified Murray as a grade 4 sales trainee. With this, Murray resigned in June of 1981, claiming that he had been "constructively discharged" by Xerox.

In December 1981, Murray commenced this action by filing a complaint with the Equal Employment Opportunity Commission, which issued a right to sue letter in July 1982. Murray's complaint in the district court alleged that he had been the victim of fraudulent and negligent misrepresentations by Xerox employees in making promises for promotions and transfers that management did not intend to honor. Murray, a male caucasian, also alleged age discrimination, sex discrimination, reverse racial discrimination and discrimination based on his status as a Vietnam veteran. Because Murray's employment discrimination claims are baseless, we discuss only the merits of the fraudulent and negligent misrepresentation claims.

## DISCUSSION

Murray essentially claims that three promises were made to him by Xerox employees with a fraudulent intent not to comply with them or with knowledge that Xerox employees had no power to perform what was promised. On each score, however, Murray has failed to raise a genuine issue of material fact for trial.

To defeat a summary judgment motion, the non-moving party must demonstrate the existence of material issues of fact to be resolved at a trial on the merits. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). In reviewing Judge Telesca's grant of summary judgment, we are guided by the Supreme Court's most recent pronouncements on the subject. The Supreme Court has stated that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Again, in *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court stated that "the issue of fact must be 'genuine' ... [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at ——, 106 S.Ct. at 1356.

In order to succeed in a fraudulent misrepresentation claim under New York law, Murray must prove by a preponderance of the evidence (1) that Xerox made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by Xerox (5) that was made for the purpose of inducing Murray to rely on it (6) that Murray rightfully did so rely (7) in ignorance of its falsity (8) to his injury. *See Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980) (citation omitted). Additionally, Murray must demonstrate that promises were made to him with a present intent not to perform the promised acts. Under New York law, a failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it is made. *See Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66, 68 (4th Dep't 1978). It is against this backdrop that we examine the legal sufficiency of Murray's claims.

### A. *Promises Made By Wade Cassidy*

Murray claims that an issue of fact exists with respect to promises of pro-

motion made to him by his supervisor, Wade Cassidy, as he was about to board a plane for a meeting with Xerox's regional vice president. According to Murray, Cassidy promised that if Murray accepted a temporary assignment at Rochester, Cassidy would take Murray back as a grade 11 manager. A letter was written by Cassidy to Jack Kelly in Rochester embodying the substance of this discussion. In it Cassidy expressly made his promise conditional on Murray's employment for "2 or 3 years in Headquarters." J. App. at 696.[1] Murray, however, failed to remain in headquarters for the required term. Clearly, because the conditions of the promise were never fulfilled, Cassidy's obligation to Murray never matured. Therefore, even assuming that an issue of fact exists as to whether the promise was actually made, Murray's claim could not survive a motion for a directed verdict. *See Anderson,* — U.S. at —, 106 S.Ct. at 2512 (standard for summary judgment "mirrors the standard for a directed verdict").

A second ground also exists upon which a verdict could be directed against Murray. Under New York law, fraudulent intent is not demonstrated by evidence of mere non-performance of a promise. *See Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 576–77 (2d Cir.1969). As we stated: "Except for repeated references to [defendant's] unsatisfactory performance under the December contract, [plaintiff] was unable to point to any evidence of an intention not to perform, and as [the district judge] properly observed, actionable fraud depends on more than a showing of non-performance." *Id.* at 576 (citations omitted).

■ Here, Murray has failed to offer evidence of fraudulent intent. The sole basis upon which Murray rests his claim is Cassidy's purported failure to follow through on the promise of promotion. No other evidence is offered which indicates that Cassidy did not intend to comply with his promise from its inception. Without such evidence, a showing of fraudulent intent fails as a matter of law. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Therefore, summary judgment was properly granted to Xerox on this issue.

### B. *Promises Made By Financing Supervisors*

■ Murray contends that James Burkey and David Zirkle, supervisors in the Financing Business Center, promised to secure a promotion for Murray to grade 11 in December 1979. Xerox argues that no such commitment was ever made. Br. of Defendants at 19. In addition, Xerox supports its assertion with documentary evi-

---

1. Murray stated in his deposition that the terms of the promise made to him by Wade Cassidy were reported to Jack Kelly in the written memorandum.

Q. All right. The fact is that you came to Rochester?
A. I came to Rochester.
Q. Now, was that pursuant to a written offer and a written acceptance?
A. It was pursuant to a letter that Wade Cassidy sent to Jack Kelly who said that the mid Ohio branch promised me that if I did not like what was happening in Rochester, I could come back there and have one of three jobs or a sales manager job that might be available at this time.
Q. Let's break that down. Who said that to you?

A. The branch manager of the mid Ohio branch, which is Wade Cassidy. *He said that. He gave me a copy. He told me this is the commitment that he was making on behalf of Xerox to Rochester.*
Q. Now did he, to your knowledge, memorialize that in a writing ever?
A. What?
Q. Did he memorialize that in a writing? Did he put that in writing?
A. It's in a memo to Jack Kelly, a typed memo to Jack Kelly, yes.
Q. The memo was given to Jack Kelly before you went on board in Rochester in sales training and development?
A. I can't give a date on the memo, but I would say yes.
Tr. 192–93 (emphasis added).

dence demonstrating that no position was firmly offered to Murray. J. App. at 353. Burkey and Zirkle, in an effort to secure Murray a promotion, completed a formal request to Xerox to create a special grade 11 position. The request form specifically stated that:

> The proposed moves and assessments represent the present opinion of your management and do not represent a commitment by Xerox Corporation. The implementation of any job changes indicated on this form depends on future circumstances such as your continued performance and development, the availability of job openings, availability of other candidates at the appropriate time, and business needs.

J. App. at 353. Murray's allegations of promises of promotion, on the other hand, are wholly conclusory and unsupported by evidence. On this state of the record, we cannot say that Murray has raised a *genuine* issue of material fact. Metaphysical doubt as to the facts is an insufficient basis on which to deny an otherwise properly supported motion for summary judgment. *Matsushita*, — U.S. at ——, 106 S.Ct. at 1355–56.

Furthermore, as previously discussed, evidence of mere non-performance of a promise is insufficient to infer fraudulent intent. Here again, Murray relies upon conclusory allegations regarding Burkey's and Zirkle's failure to honor their commitments. Thus, if Murray offered at trial only the evidence contained in his affidavits, a motion for a directed verdict would be successful.

Accordingly, summary judgment was proper with respect to promises made by Burkey and Zirkle.

### C. *Promises of Transfer*

 As the third allegedly fraudulent promise made to him, Murray claims that James Burkey agreed to secure a transfer back to Ohio if Murray agreed to redraft a request for transfer. However, Murray acknowledged in his deposition testimony that Burkey agreed only to do what was possible to "expedite" his request.[2] No firm promise of a transfer was ever shown and, therefore, no issue of fact exists with respect to this claim.

Moreover, Murray simply argues that Burkey's "promise" was fraudulent because he was not transferred when requested. Again, mere evidence of non-performance will not avail Murray in establishing fraud. In fact, even Murray's showing of non-performance is weakened by the fact that he *was* eventually transferred to Ohio. There is no question, therefore, that summary judgment was properly granted on the basis of this record.

### D. *Claims of Negligent Misrepresentation*

 In addition to claiming fraudulent misrepresentation, Murray also claims that his mid-Ohio and Rochester superiors were negligent in promising promotions and job transfers. These negligent misrepresentation claims, however, all suffer from a common defect. Promises of future conduct are not actionable as negligent misrepresentations. *Margrove Inc. v. Lincoln First Bank of Rochester*, 54 A.D.2d 1105, 388 N.Y.S.2d 958, 959 (4th Dep't 1976). Murray's efforts to frame broken promises into misrepresentations of present facts are fruitless. Clearly, Murray complains of no

---

2. Q. No guarantees were given to you at that point as to whether, if ever, you would be back in a Xerox position in Ohio in August of '80?
A. The term guarantee at that given point in time no longer meant a hell of a lot when it came to the voice of the Xerox employees or managers.
Q. But what was told to you by Mr. Burkey was—
A. Mr. Burkey said he would expedite the procedure as quickly as possible.

Q. What do you mean by expedite the procedure?
A. In other words, he would do—as he said during his deposition, he would do everything possible to get me back with my family as quickly as possible.
Q. All right. So that's it, right, he would do what was possible?
A. That is correct.
Tr. 246 (excerpt from transcript of deposition of Joseph Murray).

more than breach of promises of future conduct regarding promotions and transfers. His complaints are not actionable under a negligent misrepresentation theory.

## CONCLUSION

Murray has failed to raise a genuine issue of material fact for trial as to alleged fraudulent misrepresentations made by Xerox. Moreover, the evidence of fraudulent intent and negligent misrepresentation offered by Murray is legally insufficient and would not have survived a motion for a directed verdict. Summary judgment in favor of Xerox was, therefore, appropriate. We have examined Murray's other assignments of error and find them to be without merit. Accordingly, the judgment of the district court is affirmed.