James C. KELLY, Plaintiff,

v.

CHASE MANHATTAN BANK and Plan Administrator For the Chase Manhattan Retirement Plan, Defendants.

No. 88 Civ. 3466(GLG).

United States District Court, S.D. New York.

July 17, 1989.

---

Law Office of Stephen P. Horner, Wilton, Conn. (Stephen P. Horner, of counsel), for plaintiff.

Kent T. Stauffer, The Chase Manhattan Bank, N.A., Litigation Div., New York City (Jeanne C. Miller, of counsel), for defendants.

## OPINION

GOETTEL, District Judge:

### I. *Facts*

The origin of this litigation can be found in the 1984 merger of Chase Manhattan Bank ("Chase") with Lincoln First Bank and its division National Bank of Westchester ("NBW"). The plaintiff began his employment with NBW in 1970 in the personnel department and ultimately rose to the position of Vice President. In or about

1982, the plaintiff transferred to the operations department of NBW, a position he held when the merger was announced in January 1984. NBW employees became Chase employees effective August 1, 1984.

After the merger, the plaintiff held the unique position of assisting in the integration of the Operations and Systems Department of NBW into Chase's existing operations. During the course of the integration, numerous meetings were held with former NBW employees in which assurances were allegedly made that people in general, and specifically the plaintiff, would not lose their jobs and would be placed elsewhere in Chase when the integration was complete.

In November 1985, the plaintiff was offered a full-time position as the human resources manager in his unit. The plaintiff accepted the position. Subsequently, the plaintiff was informed that the offer would be rescinded because the individual who held the job three months earlier, Linn Johnson, had returned to the position following a reorganization. In April 1986, the plaintiff was offered the position of Distribution Services Manager, and again the plaintiff accepted. Within a few weeks, this offer was also rescinded. The plaintiff continued an unsuccessful search for another job with Chase, knowing that his current job was of limited duration. In March 1987, when the integration was complete, the plaintiff was discharged. At the time of his discharge, the plaintiff was given a salary increase that he was scheduled to receive on March 1, 1987, and that had the effect of increasing his severance benefits.

On September 1, 1987, the plaintiff simultaneously filed a charge with the New York Human Rights Commission and the Equal Employment Opportunity Commission, claiming age discrimination.

In October 1987, a decision was made to offer the plaintiff reinstatement. Although the plaintiff indicated that he was accepting another offer of employment, Chase sent the plaintiff a written offer of two positions. Both offerings were for the position of human resource generalist, one in New York City and one on Long Island. Both positions carried the same salary and benefits as the plaintiff had been receiving in his prior position. One of the positions, however, would require the plaintiff to work under Linn Johnson, the individual to whom his first job offer had gone. Although the plaintiff asked for and received further details on the openings, he did not accept either job offer.

In October 1987, Chase instituted a voluntary retirement program to eligible employees who were employees in service on October 21, 1987.

The plaintiff commenced this action in May 1988 against Chase and Chase's Plan Administrator (collectively referred to as the "defendant") asserting claims under the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), and state contract and tort law principles. The defendant moves for partial summary judgment.

## II. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If that burden is met, the non-moving party cannot simply rest on its complaint setting forth a valid cause of action. Fed.R.Civ.P. 56(e); *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). It "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In determining whether that burden is met, however, the court must draw all reasonable inferences and resolve all ambiguities in

favor of the non-moving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). Nonetheless, the Supreme Court has affirmatively indicated its support for Rule 56 as an important procedural tool. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. *Liability under the ADEA*

■ The defendant moves for partial summary judgment on count one of the complaint alleging age discrimination. The defendant contends that because Chase unconditionally offered to reinstate the plaintiff to his choice of two positions and the plaintiff refused both positions, Chase has no liability for damages after October 21, 1987, the date of the offer. In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), a case brought under Title VII, the Supreme Court stated that "a claimant's statutory obligation to minimize damages requires him to accept an unconditional offer of the job originally sought, even without retroactive seniority." *Id.* at 234, 102 S.Ct. at 3066. This principle has been applied to cases brought under the ADEA, and has been liberalized to include offers of a "substantially equivalent" job. *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1258 (2d Cir.1987).

The defendant contends that the two positions offered to the plaintiff were substantially equivalent to the plaintiff's prior position in that they carried the same salary and benefits. *See Cowen v. Standard Brands, Inc.*, 572 F.Supp. 1576, 1581 (N.D. Ala.1983) (job carrying same salary and fringes is, "in the legal sense 'comparable' "). The plaintiff argues, however, that the proposed jobs involved greatly decreased responsibilities and were performed by personnel with lower grade levels than the plaintiff. Consequently, the plaintiff argues, he was not required to accept the offers of employment. *See Braddy v. Jersey Shore Medical Ctr.*, 44

Fair Empl.Prac.Cas. 149, 1987 WL 13002 (D.N.J.1987) (plaintiff "not, as part of the duty of mitigation, required to go into another line of work, accept a demotion or take a demeaning position"). Although the Second Circuit does not appear to have delineated the appropriate measure of "substantially equivalent" work, we think it clear that it is a question of fact properly reserved for the jury. *See EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir. 1984); *Braddy v. Jersey Shore Medical Ctr.*, 44 Fair Empl.Prac.Cas. 149 (D.N.J. 1987). An assessment of the responsibilities and benefits of the jobs offered as compared with the job previously held by the plaintiff is necessarily an issue of fact, inappropriate for summary judgment. Partial summary judgment on this count is, therefore, denied.

### IV. *Administration of Chase's Profit–Sharing Plan*

■ Counts eight and nine of the plaintiff's complaint allege violations of ERISA sections 502(a)(1)(B) and 502(e)(1) for failure to make profit-sharing payments to the plaintiff during the first two years of his employment with Chase. 29 U.S.C. §§ 1132(a)(1)(B), 1132(e)(1). Chase's written profit-sharing plan mandates a two-year waiting period for participation by employees hired after January 1, 1983. Nevertheless, the plaintiff argues that Chase orally promised to provide him with profit-sharing payments as of the starting date of his Chase employment.

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). It was Congress' clear intention that official plan documents exclusively govern both the employer's obligations and the employee's entitlement under the benefit plans. *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988). Indeed,

> [w]ere all communications between an employer and plan beneficiaries to be considered along with the SPDs [summary plan descriptions] as establishing the terms of a welfare plan, the plan doc-

uments and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

*Id.* Consequently, any oral statements made to the plaintiff indicating that he would receive profit-sharing benefits immediately upon commencement of his employment with Chase are insufficient to alter the clear language of the ERISA plan. "[A]bsent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." *Id.* No such showing has been made here. Consequently, summary judgment is granted to the defendant on counts eight and nine of the complaint.

## V. *Discriminatory Discharge Under ERISA*

■ The plaintiff, in count thirteen of the complaint, alleges that Chase fired him to prevent him from participating in Chase's voluntary early retirement program, and to save money by discontinuing an employee with a high salary and accompanying high pension benefits, in violation of section 510 of ERISA. 29 U.S.C. § 1140. Initially, the defendant argues that, as a matter of law, the plaintiff cannot maintain a cause of action under section 510 for early retirement benefits. Section 510 proscribes discrimination against participants in ERISA benefit plans by making it unlawful to interfere with the attainment of any right to which the participant may become entitled under an ERISA benefit plan. 29 U.S.C. § 1140. The defendant contends that the "accrued benefits secured by ERISA do not encompass *unfunded, contingent* early retirement benefits." *Sutton v. Weirton Steel Division,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984) (emphasis added). The Second Circuit, on the other hand, has held that *funded* early retirement benefits are accrued benefits within the protection of

section 510. *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1413 (2d Cir. 1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). At oral argument, the defendant stated its belief that the voluntary early retirement plan at issue in this litigation is a funded plan. For the purposes of this motion, therefore, we will assume that the benefit plan at issue herein is protected by section 510 of ERISA.

"No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd mem.,* 742 F.2d 1441 (2d Cir.1983). Consequently, an ERISA plaintiff must prove that he was terminated with the specific intent to interfere with his protected benefits. *Id.* Because proof of intent in an ERISA case can be as difficult as in any other case of discriminatory intent, the Second Circuit has applied the framework for proving discriminatory intent in a Title VII case to ERISA claims brought under section 510. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988). The framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), has been summarized by the Court as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection...." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.) Thus, to sustain a cause of action under section 510, a plaintiff must demonstrate: (1) that he is a member of a protected class, i.e., an employee who may be entitled to the benefit of a covered plan; (2) that he was qualified for the position he held; and (3) that the timing of the discharge and the resulting savings to the employer raised an inference of discrimination. *Dister,* 859 F.2d at 1115.

The defendant concedes that the plaintiff is a member of the protected class and was qualified for his job.[1] To make out a prima facie case of discrimination, however, the plaintiff must adduce sufficient evidence to raise an inference of discrimination. The plaintiff contends that such an inference has been raised because he was discharged six months prior to vesting in Chase's voluntary retirement plan with resultant savings to Chase. The defendant, on the other hand, argues that the early retirement program was not instituted until eight months after plaintiff's termination and cannot, therefore, form the basis of a discriminatory discharge claim.

The plaintiff was discharged from Chase's employ on March 15, 1987. On October 21, 1987, Chase introduced a voluntary retirement program to then current employees. Deposition testimony of Michael Shield, Chase's Employee Relations manager, indicates that consideration of the plan did not begin until approximately the spring of 1987. The plaintiff contends that the deposition testimony of Ronald Koprowski, Chase's Human Resources Executive, is that discussions began in "early" 1987. Thus, the plaintiff argues, Kelly was terminated with full knowledge that an early retirement plan would be implemented under which Kelly could claim increased benefits.

We do not think this raises an inference of discrimination sufficient to sustain a cause of action under section 510. Unlike *Dister,* this is not a case where the plaintiff was prevented from vesting in a pre-existing benefit plan. Rather, plaintiff complains that he was prevented from enjoying a benefit yet to be created. This alone cannot raise an inference of discrimination. To hold otherwise would subject every large corporation to charges of discrimination by recently-terminated employees whenever a benefit plan was subsequently implemented. Not only would this wreak havoc in the administration of ERISA plans but it would also operate as a disincentive to the expansion of employee benefits. Thus, we find that the plaintiff has failed to demonstrate that he was discharged under circumstances giving rise to an inference of discrimination. His failure to make out a prima facie case is fatal to his cause of action.

■ Count thirteen also charges that the plaintiff was discharged "in order to save money rather than continue employing a high-salaried employee with an accompanying high pension entitlement." The defendant concedes that the plaintiff was fully vested in his pension plan at the time of his discharge. Thus, the plaintiff's claim is that had he remained as an employee, he would have accrued additional benefits. Such a claim is not cognizable under section 510. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988) (citing *Corum v. Farm Credit Servs.,* 628 F.Supp. 707, 718 (D.Minn.1986) (plaintiff must show more than "lost opportunity to accrue additional benefits") and *Baker v. Kaiser Aluminum & Chem. Corp.,* 608 F.Supp. 1315, 1319 (N.D.Calif.1984) ("The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits.")). The defendants motion for summary judgment on count thirteen, therefore, is granted in its entirety.

---

1. We question whether, under the *Dister* framework, the plaintiff is an employee "who [has] an opportunity to attain rights in a covered benefit plan." *Dister,* 859 F.2d at 1115. As discussed more fully, *infra,* we doubt that the plaintiff was eligible to participate in the voluntary retirement program by virtue of his termination prior to the plan's implementation. Because the defendant concedes that the plaintiff is a member of the protected class, however, we will assume that he is so protected for the purposes of this motion.

## VI. *Reporting Violations*

In count seven of his complaint, the plaintiff alleges that Chase failed to furnish the plaintiff with a copy of the summary plan description for his retirement plan and a statement of his pension benefit entitlement within 30 days of his request in violation of sections 104 and 105 of ERISA. 29 U.S.C. §§ 1024, 1025. Section 104(b)(4) of ERISA requires a plan administrator to furnish, upon written request by a beneficiary, a copy of the current summary plan description. 29 U.S.C. § 1024(b)(4). Section 105 of ERISA requires the plan administrator to provide to a plan participant in response to a written request, a statement detailing the total benefits accrued by the participant. 29 U.S.C. § 1025. Failure by the plan administrator to respond to such a request within 30 days permits a court, in its discretion, to assess a penalty on the administrator in an amount up to $100 per day. 29 U.S.C. § 1132(c)(1)(B).

The clear weight of authority indicates that penalties will not be imposed on a plan administrator absent a showing by the plaintiff that he has suffered some degree of harm resulting from the delay. *See Pollock v. Castrovinci*, 476 F.Supp. 606, 618 (S.D.N.Y.1979), *aff'd mem.*, 622 F.2d 575 (2d Cir.1980); *see also Paris v. Profit Sharing Plan*, 637 F.2d 357, 362 (5th Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Chambers v. European American Bank & Trust Co.*, 601 F.Supp. 630, 638–39 (E.D.N.Y.1985). Although the plaintiff's complaint is devoid of any allegation of harm, the plaintiff argues in opposition to this motion that the nine month delay in receiving the requested information prejudiced him by complicating his job search, his evaluation of job offers and his negotiations for employment with his future employer. The plaintiff further argues that the delay impeded his decision to file a lawsuit against the defendant. The plaintiff fails, however, to point to concrete losses suffered as a result of these complications.

Such general allegations and speculative inferences are not sufficient to overcome a motion for summary judgment. Discovery now being largely complete, the plaintiff is expected to lay bare his proof in opposition to the defendant's motion. The plaintiff has failed to demonstrate that it was prejudiced by the administrator's delay, an element on which the plaintiff will carry the burden of proof at trial.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Consequently, the defendant's motion for summary judgment on count seven of the complaint is granted.

## VII. *State Law Claims*

Counts two, three, four, five and six of the plaintiff's complaint charge breach of employment contract, breach of the covenant of good faith, negligent misrepresentation/negligent infliction of emotional distress, promissory estoppel and intentional infliction of emotional distress, respectively. In its motion for summary judgment, the defendant asked this court to decline to exercise pendent jurisdiction over these state law claims. Since oral argument on this motion, however, the plaintiff has amended his complaint to assert diversity of citizenship as a basis for this court's jurisdiction over these state law claims.[2] Thus, we will consider the merits of the defendant's summary judgment motion on these counts.

### A. *Breach of Employment Contract*

Count two of the plaintiff's complaint alleges breach of an employment contract. The defendant moves for summary judgment on this count contending

---

**2.** The plaintiff is a citizen of the State of Connecticut and the defendant corporation is a citizen of New York. 28 U.S.C. § 1332.

that the plaintiff's employment was an employment at will. The New York courts maintain a "long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983). Although the plaintiff apparently concedes that his employment arrangement with Chase did not include a definite term of employment, he argues that Chase's verbal and written promises of job security created an implied contract of employment.

Abstract assurances of future employment will not transform and employment at will to a contract of permanent employment. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.1980). In this case, the plaintiff contends that the defendant, through its agents made statements to the effect of: "you will have a good career with Chase;" "don't worry you will not be terminated; there are plenty of jobs for good managers;" and "there is nothing to worry about, we will find jobs for everybody." These statements, as a matter of law, are not sufficiently definitive to rise to the level of employment contracts. *See, e.g., Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 762 (S.D.N.Y.1986) (promise of "full working life" did not state a definite term); *Diskin v. Consolidated Edison Co.*, 135 A.D.2d 775, 522 N.Y.S.2d 888, 890 (2d Dep't 1987) (oral assurances that employee would not be terminated except for cause insufficient to overcome hiring at will presumption), *appeal denied*, 72 N.Y.2d 802, 530 N.Y.S.2d 554, 526 N.E.2d 45 (1988); *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 520 N.Y.S.2d 764, 765 (1st Dep't 1987) (hiring for "the longer term" hiring at will).

In *Weiner v. McGraw Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), the New York Court of Appeals found that certain circumstances may create limits on an employer's right to discharge an employee at will. In *Weiner*,

[f]irst, plaintiff was induced to leave Prentice–Hall with the assurance that McGraw–Hill would not discharge him without cause. Second, this assurance was incorporated into the employment application. Third, plaintiff rejected other offers of employment in reliance on the assurance. Fourth, ... he was instructed by his supervisors to proceed in strict compliance with the handbook and policy manuals because employees could be discharged only for cause.

*Id.* at 465–66, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. The plaintiff in this action has not alleged facts sufficient to invoke the protection of *Weiner*. The plaintiff did not leave another job in reliance on Chase's assurances, nor did the plaintiff reject specific offers of employment.[3] Additionally, Chase's personnel manuals and handbooks nowhere indicated that the plaintiff's employment would be anything but terminable at will. In sum, the plaintiff simply does not fall under the umbrella protection provided by *Weiner*. *See Diskin v. Consolidated Edison Co.*, 135 A.D.2d 775, 522 N.Y.S.2d 888, 890 (2d Dep't 1987) ("The plaintiff's breach of contract cause of action in effect rests on little more than alleged oral assurances by upper management personnel that he would be discharged only for cause. Those assurances are insufficient to bring this case within the limits of *Weiner v. McGraw–Hill*."), *appeal denied*, 72 N.Y.2d 802, 530 N.Y.S.2d 554, 526 N.E.2d 45 (1988).

Our finding that the plaintiff has failed to state a claim for breach of employment contract forecloses both counts two, for breach of contract, and count three, for breach of the implied covenant of good

---

**3.** The plaintiff argues that he received calls from recruitment firms asking if he was interested in looking for a job elsewhere. The plaintiff indicated that he was not presently in the market for a new job. This was not a rejection of employment but rather indicates that the plaintiff had decided not to pursue outside employment. While this demonstrates the plaintiff's belief that his job was secure with Chase, it does not rise to the level of reliance present in *Weiner*.

faith and fair dealing. Consequently, the defendant's motion for summary judgment is granted on counts two and three of the complaint.

### B. *Negligent Infliction of Emotional Distress*

■ Count four of the plaintiff's complaint alleges a cause of action sounding in negligent infliction of emotional distress. Although New York law has long recognized a cause of action for intentional infliction of emotional distress, *see Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983), a cause of action for *negligent* infliction of emotional distress has been recognized only under unique circumstances. *See, e.g., Battalla v. State of New York*, 10 N.Y.2d 237, 239, 219 N.Y. S.2d 34, 35, 176 N.E.2d 729, 729 (1961) (emotional distress caused by negligent operation of ski lift); *Ferrara v. Galluchio*, 5 N.Y.2d 16, 21, 176 N.Y.S.2d 996, 999, 152 N.E.2d 249, 251 (1958) (mental anguish inflicted by false report of cancer). Indeed, recovery for negligent infliction of emotional distress "is circumscribed to unique facts where a special duty is owed." *Rubinstein v. New York Post Corp.*, 128 Misc.2d 1, 488 N.Y.S.2d 331, 334 (Sup.Ct. 1985).

The plaintiff argues that the defendant owed the plaintiff a special duty to avoid making job security commitments when the defendant should have known that such representations were inaccurate. This is not an obligation unique to the plaintiff. Certainly a corporation has a duty to act honestly and in good faith in all its employment practices. Even under the most optimal circumstances, however, termination of an employee is likely to give rise to bad feelings and anxiety. This cannot mean that every adverse employment decision may give rise to a claim of negligent infliction of emotional distress. In sum, the plaintiff has not alleged facts sufficient to support a claim for negligent infliction of emotional distress.

Count four could also be construed as asserting a cause of action for fraudulent misrepresentations. Indeed, in its summary judgment motion, the defendant addressed count four as either a claim for fraudulent misrepresentations or for negligent infliction of emotional distress. In opposition to the motion, however, the plaintiff responded only in terms of the latter.

■ It is unnecessary for this court to determine which of the two theories the plaintiff intended to assert. Even were this count read as alleging a claim for fraudulent misrepresentations, summary judgment would be appropriate. In order to succeed on such a claim, the plaintiff must prove that a misrepresentation was made as to a material fact which was false and was known to be false at the time it was made, that the misrepresentation was made to induce reliance by the plaintiff and the plaintiff did so rely to his injury. *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987). Under New York law, "a failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it is made." *Id.* Although discovery is nearly complete, the plaintiff has failed to demonstrate that the defendant never intended to secure a job for the plaintiff within Chase. Evidence of nonperformance of alleged promises is not proof of fraudulent intent. Summary judgment, therefore, would be appropriate if the plaintiff's count four is construed as a claim for negligent misrepresentation. *Id.* at 122. Consequently, the defendant's motion for summary judgment on count four of the complaint is granted.

### C. *Promissory Estoppel*

■ The plaintiff alleges, in count five of the complaint, that the defendant should be estopped from denying its promises of job security to the plaintiff. Specifically, the plaintiff contends that the defendant's statements, quoted in part above, constitute specific promises that the defendant may not be heard to deny. Promissory estoppel under New York law requires "(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3)

an injury sustained by the party asserting the estoppel. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 78 (2d Cir.1984). The statements proffered by the plaintiff are not clear and unambiguous promises justifying the application of promissory estoppel. Rather, the defendant's statements, which for the purposes of this motion they do not dispute making, are general assurances of longevity with the company. These statements cannot form the basis of a promissory estoppel. *Marine Transport Lines v. International Org. of Masters, Mates & Pilots*, 636 F.Supp. 384, 391 (S.D.N.Y.1986) (statements of "we're partners" and "we look forward to growing together" insufficient to invoke promissory estoppel). Consequently, the defendant's motion for summary judgment on count five of the complaint is granted.

### D. Intentional Infliction of Emotional Distress

■ In count six, the plaintiff alleges that the defendant is liable for intentional infliction of emotional distress resulting from the "defendant's handling of plaintiff's employment termination and its rescission of two accepted employment offers." Complaint, ¶ 69. The last act alleged by the plaintiff, his discharge, occurred on March 15, 1987. The plaintiff filed his complaint on May 4, 1988. Intentional infliction of emotional distress in New York is governed by a one year statute of limitations. N.Y.Civ.Prac.L. & R. 215. Consequently, the plaintiff's action was time-barred on March 15, 1988.

The plaintiff argues that any violations of corporate policy by Chase are part of a "continuing violation" occurring both within and without the statute of limitations. Alleged policy infractions occurring within the limitations period include the defendant's failure to offer an available higher level position to the plaintiff and the defendant's continued hiring of new employees. The plaintiff cites no case authority in sup-

port of its novel position and we think it cannot be defended. The acts giving rise to the plaintiff's claim are clearly the offer and subsequent recision of two job offers and his termination from Chase's employ. The defendant's actions subsequent to the plaintiff's termination, while perhaps in violation of corporate policy, will not extend the statute of limitations on the plaintiff's action. Thus, the defendant's motion for summary judgment on count six of the complaint is granted.

### VIII. Counts Ten, Eleven and Twelve

■ The defendant further moves for summary judgment on counts ten, eleven and twelve of the plaintiff's complaint. In these counts, the plaintiff seeks payment of his vested pension entitlement according to "the greater of the two plans"—i.e., application of the defendant's pension plan rather than Lincoln First Bank's pension plan. In an effort to narrow the issues for trial, in a series of letters to the plaintiff and his counsel on June 13, 1989, the defendant made a unilateral commitment to pay the plaintiff $309.06 a month in addition to the retirement benefit to which he is presently entitled. The plaintiff's resulting pension, therefore, will equal the pension to which he would be entitled under the defendant's pension plan.[4] Accordingly, the defendant has moved for summary judgment on counts ten, eleven and twelve, contending that they have been rendered moot by Chase's monetary commitment.

In opposition to the defendant's motion, the plaintiff argues that the claims are not moot because he is entitled to further relief than the $309.06 monthly pension payment. Specifically, the plaintiff argues, without supporting citation, that a declaration that the plaintiff is entitled to receive "the greater of the two pension plans" would entitle the plaintiff to receive any future improvements to the plan that might be applied retroactively. The plaintiff further argues that, should he prevail on his age

---

**4.** Under Chase's pension plan, the plaintiff would have received $1,009.86 single life annuity at age 65 if he had worked for Chase for all 17 years of his service. The plaintiff's present single life annuity at age 65 benefit is $700.80.

Thus, the defendant's commitment to pay an additional $309.06 to the plaintiff upon reaching retirement age makes the plaintiff's monthly pension benefit equal to payments under Chase's plan.

discrimination claim, he might be entitled to an adjustment in his pension payment based on a back pay or front pay award. Finally, the plaintiff argues that an award on his age discrimination claim might entitle him to elect to participate in Chase's Voluntary Retirement Plan.

Article III of the United States Constitution requires that a party seeking to proceed with suit in the federal courts have suffered "a distinct and palpable injury," *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978), and that "the exercise of the Court's remedial powers would redress the claimed injury." *Id.* at 74, 98 S.Ct. at 2631. The mootness doctrine requires that these elements be present throughout the course of the litigation. *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir.1980). Thus, "[a] party's case or controversy becomes moot either when the injury is healed and only prospective relief has been sought or when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Id.*

The possibility of future retroactive improvements to Chase's pension plan cannot form the basis of a cognizable case or controversy. The Article III standing requirements demand more than the speculative sort of injury raised by the plaintiff's argument. The argument that Chase *might* revise the pension plan and that that revision *might* be applied retroactively simply is not a sufficiently concrete injury to support a claim for relief.

Similarly, the plaintiff's claim that his pension entitlement might be different if he prevails on his age discrimination claim is insufficient to withstand the defendant's mootness challenge. To the extent that the defendant is found liable for age discrimination, the court has the power to fashion a remedy that will fully compensate the plaintiff for all his injury—including pension losses. Moreover, in a letter to the court dated July 12, 1989, the defendant has represented that if a judgment for the plaintiff includes increases in salary and service for the time between discharge and judgment, Chase would adjust its monthly commitment accordingly. Thus, the plaintiff will not be deprived of future adjustments in his pension to compensate for age discrimination.

Similarly, if an award on the plaintiffs' age discrimination claim would entitle him to elect Chase's voluntary retirement plan, nothing in our decision would prevent such participation. As stated above, the court is empowered with the authority to grant the plaintiff appropriate relief. Dismissal of counts ten, eleven and twelve regarding the measure of plaintiff's pension entitlement will not bar the plaintiff's decision to elect the voluntary retirement plan, should that option become available to him. Consequently, a determination that Chase's monthly commitment resolves counts ten, eleven and twelve will not deprive the plaintiff of any of the relief he seeks.

## IX. *Conclusion*

The only claim now remaining for trial is count one of the complaint alleging a cause of action under the ADEA, the defendant's motion for partial summary judgment on that count having been denied. The defendant's notion for summary judgment on counts two through five is granted, there being no genuine issue of material fact for trial. Count six is dismissed as barred by the statute of limitations. Counts seven, eight and nine are dismissed as they fail to present a triable issue of fact for trial. Counts ten, eleven and twelve are moot by virtue of Chase's commitment to pay the plaintiff certain sums and count thirteen is dismissed for failure to prove a prima facie case.

SO ORDERED.