ALISA KASACHKOFF, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, February 28, 1985

## APPEARANCES OF COUNSEL

*Barry P. Schwartz* of counsel (*Ronald E. Sternberg* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*John G. Lipsett* of counsel (*Forsythe, Holbrook, Seward & Bovone,* attorneys), for respondent.

## OPINION OF THE COURT

SANDLER, J.

Plaintiff was employed by defendant Bellevue Hospital as a senior psychologist in its Rehabilitation Medicine Service (RMS) from on or about May 19, 1980 until on or about November 30, 1981, when she was transferred to Lincoln Medical and Mental Health Center. During this period, defendant Bruce Grynbaum was the director of RMS, and defendant Angelo Canedo was a senior rehabilitation psychologist of the Service.

On October 23, 1980, just prior to the expiration of plaintiff's probationary period, Grynbaum recommended her termination in a report evaluating her work as unsatisfactory. Following a grievance hearing initiated by plaintiff, the Office of Labor Relations determined that there had been a failure by management to follow Health and Hospitals Corporation (HHC) Operating Procedure 20-40, § 4 (H), which requires an employee's supervisor, prior to such termination, to meet with the employee to review the evaluation and discuss at that time plans for improving the employee's performance. As a result, plaintiff's probation was deemed satisfactory and she was certified as a senior psychologist.

On January 26, 1981, a counseling session was held pursuant to Operating Procedure 20-10. At this meeting were plaintiff, her union representative, the RMS associate director of administrative affairs, the chief of Bellevue's Psychology Department and the defendant Canedo, who appeared in place of the absent acting chief psychologist. Pursuant to request, Canedo had prepared a written summary of the various events that had given rise to dissatisfaction with plaintiff's performance. At this meeting, clearly confidential in character, plaintiff was informed in detail of these matters. In the first cause of action of the complaint, alleging defamation, it is claimed that Canedo said:

"During the first two months of plaintiff's employment, plaintiff was observed on several occasions to be intoxicated and unable to perform her professional duties, and that on one such occasion her speech was practically unintelligible and she had vomitus on her face and clothing some of which had dried." "That plaintiff profusely dribbled on her dress which she had worn for three consecutive days", "that her appearance was generally disheveled and there was a distinctly noxious odor when standing in her presence", and further "that plaintiff stumbled as she walked and ran into the wall several times, clearly unable to maintain her balance".

On March 16, 1981, pursuant to plaintiff's request in accordance with her rights under her collective bargaining contract, a labor/management meeting was held in the office of Bellevue's deputy executive director, to discuss the difficulties which had arisen with regard to plaintiff's employment with RMS. Present were plaintiff, her attorney, her union representative, Bellevue's deputy executive director, Bellevue's director of labor relations, and Grynbaum. At this meeting the defendant Grynbaum allegedly said, as set forth in the second cause of action in the complaint, also alleging defamation, that plaintiff "wore dirty, filthy, torn and tattered clothes", and that she was a "racist". Grynbaum acknowledges having made the comment with regard to her clothing, disclaims any recollection of having called her a racist, but agrees that he set forth his concerns over what seemed to him plaintiff's difficulties in relating appropriately to black patients.

In April 1981 plaintiff, seeking damages for defamation of character, intentional infliction of emotional distress, wrongful discharge from her position, and prima facie tort, filed a notice of claim with the city's comptroller and HHC's general counsel, which, as here pertinent, stated: "On January 26, 1981, the claimant was defamed by employees of the Health and Hospitals Corporation, Bellevue Hospital and the City of New York at Bellevue Hospital by accusing claimant of alcoholism and being drunk."

In January of 1982 the plaintiff commenced this action, asserting five causes of action. The first and second, alleging defamation, were based upon the above-quoted statements. In the third and fourth causes of action, plaintiff alleged intentional infliction of emotional distress and prima facie tort. The fifth cause of action alleged wrongful discharge of plaintiff from her employment at Bellevue.

In the order appealed from, Special Term dismissed the fourth and fifth causes of action, dismissed the complaint against Bellevue, and struck plaintiff's demand for punitive damages. Defendants appeal from that order to the extent to which it denied their motion to dismiss the remaining causes of action pursuant to General Municipal Law § 50-e, CPLR 3211 (a) (7) and CPLR 3212, the latter part of the motion asserting that the defendants were either immune from liability due to an absolute privilege or due to a qualified one as to which there was no issue of fact.

Preliminarily it is clear that New York City is not a proper party to this action. The events giving rise to plaintiff's claims arose out of her employment at Bellevue, a Health and Hospitals Corporation hospital, which is an entity wholly separate from the city. (*See, Brennan v City of New York,* 59 NY2d 791, 792, *affg* 88 AD2d 871; *Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662, 665; *Williams v City of New York,* 97 AD2d 372, 373.)

We think it equally clear that the remaining three causes of action must be dismissed as to HHC because of a failure to comply with General Municipal Law § 50-e (1) (a) and § 50-i (1) and McKinney's Unconsolidated Laws of NY § 7401 (2) (New York City Health and Hospitals Corporation Act § 20 [2] [L 1969, ch 1016, § 1, as amended]), which require as a condition precedent to the commencement of a tort action against the city and HHC, respectively, that a notice of claim be served within 90 days after the claim arises.

As to the second cause of action alleging defamation in the course of the labor/management meeting on March 16, 1981, no notice of claim whatever was filed, an omission clearly mandating, in the absence of any corrective timely motion, dismissal of that cause of action.

As to the first cause of action, the notice of claim filed was insufficient to comply with the requirement of General Municipal Law § 50-e (2) (3) that it set forth "the time when, the place where and the manner in which the claim arose". A notice of claim which asserts that on a particular date, the time or approximate time not being specified, somewhere in the complex of buildings that constitute Bellevue Hospital, unnamed employees of the hospital made defamatory statements, was not sufficient to give HHC that notice clearly contemplated by the statutory section. (*Cf. Faubert v City of New York,* 90 AD2d 509; *Campbell v City of New York,* 78 AD2d 631.)

An important defect in the notice of claim is the failure to identify the person who made the defamatory remarks, although that person was clearly known to the plaintiff. This situation is not to be confused with the more commonly encountered one in which a person is injured in an accident, is immediately removed for medical treatment from that location, and to some extent is required, in formulating the notice of claim, to depend upon an imprecise memory as to the exact point of the events. Minor errors in describing the precise location may properly be excused in such circumstances, assuming these errors did not in any realistic way prejudice the governmental entity. The plaintiff's failure here to provide necessary information of the kind contemplated by section 50-e (2) (3), which was in her possession, is not so readily excusable.

Although the defendants inadvertently failed to include in their notice of appeal the third cause of action alleging intentional infliction of emotional distress, it is obvious that the third cause of action as well must be dismissed because of a failure to file a timely, appropriate notice of claim.

As to the further contention of defendants that plaintiff's noncompliance with the notice of claim statutes mandates dismissal of the claims against the individual defendants pursuant to General Municipal Law § 50-e (1) (b) and § 50-k (3) and Unconsolidated Laws § 7401 (6), we deem it unnecessary to determine that issue in light of the view we take of the substantive issues presented.

Turning then to the issues presented by the motion of the individual defendants for summary judgment dismissing the two defamation causes of action, it is clear that the statements made under the circumstances described are protected by a qualified privilege. The principle was long ago set forth in *Byam v Collins* (111 NY 143, 150): " 'A communication made *bona fide* upon any subject matter in which the party communicating has an *interest,* or in reference to which he has a *duty,* is privileged if made to a person having a corresponding *interest* or *duty,* although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation'." (*See also, Shapiro v Health Ins. Plan of Greater N. Y.,* 7 NY2d 56, 60.) The applicability of the privilege to statements made by an employer/supervisor reviewing or evaluating the performance of an employee is well established. (*See, e.g., Bozicevich v American Airlines,* 54 AD2d 542; *De Sapio v Kohlmeyer,* 52 AD2d 780; *Gordon v Allstate Ins. Co.,* 71 AD2d 850.)

The circumstances in which the allegedly defamatory statements were made here were peculiarly compelling ones for application of the privilege. The statements were made, in a clearly confidential setting, to a small group of persons vitally interested in the subject matter of the meeting, including the plaintiff herself. The individual defendants had an obligation to express their concerns with the utmost candor.

The statements being qualifiedly privileged, the burden devolved upon the plaintiff in opposing the motion for summary judgment, to demonstrate a triable issue of fact by proffering evidentiary proof that defendants were motivated by "actual malice" (*Stillman v Ford,* 22 NY2d 48, 53; *Shapiro v Health Ins. Plan of Greater N. Y.,* 7 NY2d, at p 61); "ill-will" (*Ashcroft v Hammond,* 197 NY 488, 495), or "personal spite * * * or culpable recklessness or negligence" (*Hoeppner v Dunkirk Print. Co.,* 254 NY 95, 106). This burden may not be met by " 'surmise, conjecture and suspicion' " (*Shapiro v Health Ins. Plan of Greater N. Y., supra,* at p 63) nor by "mere conclusions, expressions of hope or unsubstantiated allegations or assertions" (*Dano v Royal Globe Ins. Co.,* 59 NY2d 827, 829). In our opinion, plaintiff failed to meet her burden of demonstrating a factual issue with regard to actual malice.

Reserving for later discussion plaintiff's contention that malice may here be inferred from the character of the allegedly false statements, we think it clear that, with one arguable exception, plaintiff's effort to establish a factual issue as to actual malice rests entirely on surmise and speculation. The single arguable exception is a curious claim by the plaintiff that the defendant Grynbaum directed her to make a false charge of criminal misconduct with regard to another employee's treatment of a patient, and threatened to have a detrimental statement made about her if she did not comply. Plaintiff's affidavit does not specify the time of this incident, the employee or the patient in question, nor does she disclose what action she took with regard to this demand other than to report it to her union. In the absence of any specifics, and in the light of plaintiff's palpable failure to take the vigorous action clearly required by the extraordinary misconduct that she now attributes to Grynbaum, we are not persuaded that this dubious statement provides a basis for finding a factual issue as to Grynbaum's actual malice.

As to plaintiff's claim that actual malice may be here inferred from the very character of the statements, the principle is of course long established that evidence of the mere falsity of the defamatory statements is not sufficient to give rise to a factual

issue as to actual malice or ill will (*Ashcroft v Hammond*, 197 NY, at p 496). As the same authority observed (at 496), there may be circumstances in which a communication "may be so extravagant in its denunciations or so vituperative in its character as to justify an inference of malice." We are not persuaded that the comment by the Court of Appeals in *Toker v Pollak* (44 NY2d 211, 219) to the effect that a qualified privilege "negate[s] any presumption of implied malice flowing from a defamatory statement" was intended to override this latter principle. However, when the statements attributed to the individual defendants are considered together with other uncontradicted and conclusively established facts, it is apparent that they may not reasonably be considered as so extravagant or vituperative as to justify an inference of malice.

From the record it clearly appears that Canedo's statements, the subject matter of the first cause of action, were directed to his observations with regard to a single episode in which, as confirmed by a detailed hospital record, plaintiff ingested 65 milligrams of Valium, required emergency treatment, and was administered an emetic to induce her to vomit. Plaintiff's response to the detailed description of these events in Canedo's affidavit is so conclusory, confused and internally contradictory as to render her account untrustworthy.

First, plaintiff explained that she had been directed by doctors in this country and abroad to take Valium when her blood was drawn, as was to happen on the day in question. In this first version, she said that she took 5 milligrams of Valium and then requested an emetic because she did not like to have drugs in her system when she was on duty. This account cannot be reconciled with the details set forth in the hospital record prepared contemporaneously with the event by persons wholly independent of the parties to this litigation.

A few pages later in plaintiff's affidavit she claimed that it was Canedo who had given her the Valium, resulting in her becoming sick and requiring an emetic. In effect, plaintiff alleged that Canedo gave her the excess dosage, assured her that it was in her best interests to take it, and said that he was providing the pills "out of friendship". The two versions given in the same affidavit are irreconcilable with each other. Viewed separately neither is credible, the first being inconsistent with the contemporaneous hospital record prepared by several disinterested doctors and nurses, and the second requiring us to accept that a senior psychologist ingested a palpably excessive quantity of Valium in reliance on the assurances of a colleague.

When the allegedly defamatory statements by Canedo are evaluated in the context of facts which may fairly be found to be undisputed, we think it clear that they do not invoke the principle permitting an inference of malice from the extravagant or vituperative character of the communication.

The same conclusion seems to us to follow with regard to Grynbaum's allegedly defamatory statements. His disapproval of plaintiff's attire scarcely invokes the principle urged by the plaintiff, particularly in view of his uncontradicted statement that he had repeatedly expressed his disapproval of plaintiff's clothing directly to her on prior occasions. As to his alleged statement that she was a racist, the record is clear that the statement, if in fact made, was made in the course of a specific detailed expression of his concerns about plaintiff's difficulties, as he observed it, in relating appropriately to black patients. So considered, we are not persuaded that the alleged falsity of the statement by itself justifies an inference of malice.

■■ Finally, plaintiff has failed to present admissible evidence sufficient to sustain her third cause of action seeking damages for intentional infliction of emotional distress. Recovery for such a tort lies "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation" (*Nader v General Motors Corp.,* 25 NY2d 560, 569; *see, Roberts v Pollack,* 92 AD2d 440, 447-448). Nothing approaching such a demonstration is presented in plaintiff's papers. The only relevant admissible evidence is that discussed above in connection with the defamation causes of action, and that evidence, found insufficient with regard to the defamation actions, is even more so with regard to the claim of intentional infliction of emotional distress. (*Cf. Liffman v Booke,* 59 AD2d 687.) Although the notice of appeal inadvertently omitted to include the third cause of action, as previously noted, the intimate relationship between that action and the defamation causes of action make it appropriate for us to reach that clearly presented issue and dismiss the third cause of action as well.

Accordingly, the order of the Supreme Court, New York County (S. Schwartz, J.), entered May 11, 1983, denying, *inter alia,* defendants' cross motion to dismiss the first, second and third causes of action, alleging defamation and intentional infliction of emotional distress, should be reversed to the extent appealed from, on the law, without costs, and defendants' motion for summary judgment dismissing the three causes of action should be granted.

KUPFERMAN, J. P., ASCH and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on May 11, 1983, unanimously reversed, on the law, without costs and without disbursements, and defendants' motion for summary judgment dismissing the three causes of action granted.