**Alfred PAYNE, Plaintiff,**

v.

**KATHRYN BEICH & NESTLE, Defendant.**

**No. CV 87–0049.**

United States District Court, E.D. New York.

Jan. 5, 1988.

Lo Murro & Eastman, Freehold, N.J., for plaintiff; Chen Kornreich, of counsel.

Townley & Updike, New York City, for defendant; John D. Canoni, of counsel.

### MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiff Alfred Payne ("Payne") seeks compensatory and punitive damages from defendant, Kathryn Beich and Nestle ("Nestle–Beich"), on three counts: (1) breach of employment contract; (2) libel and slander; and (3) tortious interference with the plaintiff's ability to fulfill his contractual obligations. Nestle–Beich now moves for partial summary judgment pursuant to Rule 56(b) of the Federal Rules of

Civil Procedure dismissing Counts Two and Three of the Complaint and striking plaintiff's demand for punitive damages.

## FACTS

Nestle–Beich sells and distributes candy and related items to schools, churches and other groups for use in their fund raising activities. The company operates primarily through the use of its sales representatives. All Nestle–Beich sales representatives are employed under written agreements that assign a particular geographic territory to each representative and designate him as the exclusive agent for sales in that territory. In addition, the employment agreements expressly prohibit any sales representative from selling competitors' products during the term of employment and for a period of one year thereafter. Payne was employed by Nestle–Beich as the sales representative for Nassau County pursuant to such a written employment agreement.

In early May 1986, Henry Conkey, Jr., Regional Sales Manager for Nestle–Beich and Payne's immediate supervisor, received information from a customer that Payne was violating his employment agreement by selling in Brooklyn, outside his assigned territory of Nassau County. Mr. Conkey discussed the situation with Paul Palladino, the Brooklyn sales representative whose territorial exclusivity was allegedly being violated and whose sales and commissions would suffer if the allegations were true. Mr. Conkey also discussed the customer report with two officials at Nestle–Beich headquarters—Richard Hamilton, the National Personnel Director, and Dennis Kelly, the National Sales Manager.

Nestle–Beich maintains that it did not discuss the customer report with anyone except the two company officials and Mr. Palladino, the Brooklyn sales representative. The plaintiff asserts in his Memorandum of Law in Opposition (at p. 3) that Mr. Conkey discussed the charges against him with "many people," including Payne's customers.

## DISCUSSION

### 1. *Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, affidavits and other evidence of record indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984); *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982). The movant's initial burden is to present such " 'evidence on which, taken by itself, it would be entitled to a directed verdict....' " *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972) (quoting *Radio City Music Hall Corp. v. United States*, 135 F.2d 715, 718 (2d Cir. 1943)). The party opposing the motion "must [then] set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). Mere conclusory allegations or denials will not defeat a motion for summary judgment. *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978).

As a threshold matter, we must determine if any issues of material fact are in dispute. The plaintiff asserts that the defendant published reports about him not only to Nestle–Beich officials, but to customers as well. Nestle–Beich denies this. At first glance, this would seem to be a dispute of material fact that goes to the heart of the defamation claim, and which would preclude disposition by summary judgment. However, plaintiff's claim that there is a genuine issue for trial is far too conclusory to mandate denial of defendant's summary judgment motion.

The initial burden is on the movant to establish the absence of a genuine issue of material fact. *See Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608. Plaintiff has met this burden in its affidavits and other papers. The burden then shifts to the party

opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff attempts to do this, offering as proof four pages of deposition testimony in which he asserts that the defendant called Marylin Steiger, a customer, and discussed the plaintiff's situation with her. As defendant points out in its Memorandum of Law, plaintiff's deposition testimony regarding Ms. Steiger was given in response to a question about the "loss of reputation" plaintiff allegedly suffered. Plaintiff testified that Mr. Conkey would call ... Marylin Steiger ... and he would prod and prod and prod." (Defendant's Ex. B at 162). But he never said that Mr. Conkey published the allegedly defamatory statements about him to Ms. Steiger. Earlier in his testimony, when asked what evidence he could rely on in support of his defamation claim, the plaintiff referred only to Mr. Conkey's conversation with Paul Palladino, and to a letter from Mr. Conkey to the plaintiff himself. The effect of Conkey's talking to Palladino is discussed *infra.* The letter, referred to by the parties as the "Cherrydale letter," is irrelevant to the question of who Conkey talked to. It refers only to comments made *by* customers to defendant, not vice-versa. And when asked, "Do you know any other person to whom Mr. Conkey made the statement, 'Al is selling Baby Ruth all over Brooklyn'?", plaintiff replied, "He could have. He could have made it. No, I don't know." In response to the question, "Did any other person call you up, like Mr. Palladino, and say, 'I heard this from Mr. Conkey'?" Plaintiff said, "No." (Defendant's Exhibit B at 155).

In light of this, plaintiff's proof that a material issue of fact is in dispute is insufficient because it is, at best, a mere conclusory allegation. During the discovery period, plaintiff had adequate time to depose Ms. Steiger or to get an affidavit from her. He did neither. Plaintiff is wrong in saying that the court "must accept" his version of the facts in contravention of defendant's proof.

Thus, we find no material issue of fact in dispute regarding this matter and we find it to be suitable for summary disposition.

### 2. *Defamation Claim*

■ Defendant claims that no defamatory remarks were made about the plaintiff, and even if they had been made, they would be protected by a qualified privilege. Thus, defendant asserts that plaintiff's claim for defamation should be dismissed. In a diversity suit, Federal Courts are required to apply the law of the forum state. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Under New York law, if there are no facts in dispute, the determination as to whether qualified privilege applies is a matter of law, not fact. *O'Neil v. Peekskill Faculty Association,* 120 A.D.2d 36, 42, 507 N.Y.S.2d 173, 178 (2d Dep't 1986).

Although a statement may be defamatory, public policy mandates that certain communications cannot serve as the basis of liability in a defamation action. *Toker v. Pollak,* 44 N.Y.2d 211, 218, 376 N.E.2d 163, 166, 405 N.Y.S.2d 1, 4 (1978). Such communications are deemed either absolutely or qualifiedly privileged. *Id.* at 218–19, 376 N.E.2d at 166, 405 N.Y.S.2d at 4. The New York Court of Appeals has defined a qualified privilege as follows:

> A communication made *bona fide* upon any subject matter in which the party communicating has an *interest,* or in reference to which he has a duty, is privileged, if made to a person having a corresponding *interest or duty,* although it contained criminating matter which, without this privilege, would be slanderous and actionable....

*Shapiro v. Health Insurance Plan,* 7 N.Y. 2d 56, 60, 163 N.E.2d 333, 335–36, 194 N.Y.S.2d 509, 512–13 (1959) (emphasis in original) (quoting *Byam v. Collins,* 111 N.Y. 143, 150, 19 N.E. 75 (1888)).

Mr. Conkey's statements are entitled to the protection of a qualified privilege. As Regional Sales Manager, Mr. Conkey had a clear interest and duty regarding whether one of his employees was violating key terms of his employment contract. More-

over, Mr. Conkey's statements were directed towards individuals with a similarly strong interest and duty, including the National Sales Manager, the Personnel Director and the Brooklyn sales representative whose efforts to sell Nestle–Beich products in the relevant area was allegedly being compromised.

A finding of qualified privilege in such a context is consistent with prior applications of the qualified privilege doctrine. In general, "[t]he applicability of the [qualified] privilege to statements made by an employer/supervisor reviewing or evaluating the performance of an employee is well established." *Kasachkoff v. City of New York,* 107 A.D.2d 130, 134, 485 N.Y.S.2d 992, 996 (1st Dep't 1985) (citations omitted). New York courts have not been hesitant to invoke qualified privilege to protect an employer's statements made in an employment context. *See, e.g., Ashcroft v. Hammond,* 197 N.Y. 488, 496, 90 N.E. 1117, 1119 (1910); *Kaplan v. MacNamara,* 116 A.D.2d 626, 627, 497 N.Y.S.2d 710, 712 (2d Dep't 1986); *Mock v. LaGuardia Hospital–HIP Hospital, Inc.,* 117 A.D.2d 721, 722, 498 N.Y.S.2d 446, 447 (2d Dep't 1986); *Harris v. Alcan Aluminum Corp.,* 91 A.D.2d 830, 831, 458 N.Y.S.2d 420, 421.

We find that Mr. Conkey's communications with the National Sales Manager, the Personnel Director and the Brooklyn sales representative fall well within the parameters of qualified privilege. To overcome a finding of qualified privilege, the plaintiff opposing a motion for summary judgment has the burden of showing "that defendants were motivated by 'actual malice' ... 'ill will' ... or 'personal spite....'" *Kasachkoff v. City of New York,* 107 A.D.2d at 135, 485 N.Y.S.2d at 996 (citations omitted). The New York Court of Appeals has stated that the plaintiff's burden cannot be met by "'surmise, conjecture and suspicion....'" *Shapiro v. Health Insurance Plan,* 7 N.Y.2d at 63, 163 N.E.2d at 337, 194 N.Y.S.2d at 515 (quoting *Bank for Savings v. Rellim Construction Co.,* 285 N.Y. 708, 708–09, 34 N.E.2d 485 (1941)). Similarly, "'mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient." *Dano v. Roy-*

*al Globe Insurance Co.,* 59 N.Y.2d 827, 829, 451 N.E.2d 488, 489, 464 N.Y.S.2d 741, 742 (1983) (quoting *Zuckerman v. City of New York,* 49 N.Y.2d 557, 562, 404 N.E.2d 718, 720, 427 N.Y.S.2d 595, 598 (1980)). Rather, courts generally require a showing consistent with an intention to injure the plaintiff. *Kaplan v. MacNamara,* 116 A.D.2d at 627, 497 N.Y.S.2d at 712 (citations omitted).

The New York Court of Appeals has said that summary judgment is appropriate in a defamation action where a qualified privilege exists and the plaintiff has failed to establish a sufficient showing of actual malice. *Harris v. Alcan Aluminum Corp.,* 91 A.D.2d at 831, 458 N.Y.S.2d at 421. In the instant case, the plaintiff's pleadings and affidavit are void of any allegations, even conclusory ones, that the defendant's statements were motivated by actual malice. The plaintiff has failed to establish the existence of a factual issue with respect to actual malice.

Therefore, we grant partial summary judgment to defendant Nestle–Beich, dismissing Count Two of the plaintiff's Complaint.

### 3. *Tortious Interference with Contract Claim*

■ The plaintiff asserts in Count Three of his Complaint that the defendant tortiously interfered with the plaintiff's "ability to fulfill his contractual obligations." However, the plaintiff never specified which contractual obligations he refers to in Count Three. The court concurs with the defendant's interpretation of the claim, that is, that the contractual obligations referred to in Count Three stem from the employment contract between the plaintiff and defendant. As such, the claim is legally insufficient because such a claim may not be properly asserted by an employee against his employer. A claim for tortious interference with contract may only be asserted against the unjustifiable interference by a third party, and not against a party to the contract. *Moreno v. Marbil Productions, Inc.,* 296 F.2d 543, 544–45 (2d

Cir.1961); *Sullivan v. American Airlines, Inc.,* 613 F.Supp. 226, 232 (S.D.N.Y.1985).

Therefore, we grant partial summary judgment to defendant Nestle–Beich, dismissing Count Three of the plaintiff's Complaint.

#### 4. *Plaintiff's Demand for Punitive Damages*

█ The plaintiff's second and third causes of action having been dismissed, the plaintiff's only remaining cause of action is for breach of contract (which defendant does not challenge on this summary judgment motion). For this reason, the plaintiff's demand for punitive damages must also be stricken. It is well-established in New York that punitive damages are not recoverable for a private breach of contract unless the conduct constituting the breach is also a tort or legal wrong for which punitive damages are recoverable. *See, e.g., Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 63 (2d Cir.1985); *Halpin v. Prudential Insurance Co.,* 48 N.Y.2d 906, 907, 401 N.E.2d 171, 171–72, 425 N.Y.S.2d 48, 49 (1979) (citations omitted). This principle applies equally to the breach of an employment contract. *Purdy v. Consumers Distributing Co.,* 648 F.Supp. 980, 982 (S.D.N.Y.1986).

Therefore, we grant partial summary judgment to defendant Nestle–Beich, dismissing plaintiff's demand for punitive damages.

#### CONCLUSION

For the reasons stated above, the defendant's motion for partial summary judgment dismissing. Counts Two and Three of the Complaint and striking the plaintiff's demand for punitive damages is granted, and it is

SO ORDERED.