**Joseph PANCZA, Jr., and Jane Pancza, Plaintiffs,**

v.

**REMCO BABY, INC., and Azrak–Hamway, Inc., Defendants.**

**Civ. A. No. 89–3131 (JCL).**

United States District Court, D. New Jersey.

April 18, 1991.

---

Linda B. Kenney, Eatontown, N.J., for plaintiffs.

Jerrold J. Wohlgemuth, Apruzzese, McDermott, Mastro & Murphy, Liberty Corner, N.J., for defendants.

## OPINION

LIFLAND, District Judge.

Plaintiff Joseph Pancza ("Pancza") sues defendants Remco Baby, Inc. and Azrak–Hamway, Inc. ("Remco") for breach of contract and in tort. All claims arise out of the termination of Pancza's employment by defendants. Plaintiff Jane Pancza sues for loss of consortium. Defendants move for summary judgment on all claims.

### BACKGROUND

Remco is a New York corporation which was established in 1988 to enter the infant toy market. Azrak–Hamway, Inc. is a New York corporation owned by the principals of Remco, Marvin Azrak and Ezra Hamway.

Pancza alleges breach of contract, fraud, tortious interference with contract, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of an implied covenant of good faith and fair dealing and promissory estoppel.

Between 1986 and November 1988, Pancza was the Director of Sales in the Personal Care Division at Marcal Paper Mills in New Jersey. Prior to his employment with Marcal, Pancza was the Director of National Accounts for Johnson & Johnson Child Development Products. At Johnson & Johnson, Pancza was responsible for the development of infant toys, and made sales presentations to head buyers of national accounts.

In August of 1988, Remco sought the assistance of an employment agency, Cook Associates, Inc. ("Cook"), in hiring a National Sales Manager for its newly-formed infant toy business. It is undisputed that

Remco informed Cook that it required someone with experience in infant toy sales, since Remco sought a candidate with buyer contacts in the infant toy business. *See* Schwanz Dep. at 13:17–19. Remco and Cook agreed that Remco would not be liable for Cook's placement fee if Pancza did not remain employed for 90 days.

Pancza was recommended to Cook's agent, David Schwanz, by someone in the toy business. *See* Schwanz Dep. at 6. Schwanz contacted Pancza in relation to the position, and Pancza indicated his interest. Schwanz thereupon recommended to Remco that it interview Pancza. Remco did so, in New York, on September 1, 1988. It is undisputed that all interviews took place in New York. In numerous interviews, Pancza and Remco's principals reviewed Pancza's contacts in the infant toy business acquired as a result of his prior employment at Johnson & Johnson in the area of child development products. *See* Pancza Dep. at 64:5–7, 20–21, 65:20–23. In his third interview, Pancza provided Remco with the names of buyers with whom he did business while employed at Johnson & Johnson, as well as the names of the accounts he was responsible for and a list of "rep organizations" used by Pancza. *See* Plaintiff's Statement of Undisputed Facts at ¶ 12. During the course of the interviewing process, Pancza was asked to submit a plan for marketing Remco's products, which he submitted in outline form. *See* Defendants' Exhibit C.

In early November 1988, Remco offered Pancza the National Sales Manager position. It is undisputed that no written contract of employment was executed at any time. *See* Pancza Dep. at 86:10–15. While in Count Two of his complaint Pancza alleges that he "understood" that he would receive a written contract upon commencement of his employment, Pancza points to no facts to support this claim and in fact

admits that no one told him this. *See* Pancza Dep. at 214:1–4 and 213:19–25. Remco informed Pancza that it would evaluate his performance at the 90–day mark, prior to payment of Cook's placement fee.[1] *See* Pancza Dep. at 181. Pancza admitted that he "assumed" that he would be evaluated on his performance, but that the basis for the evaluation was not specifically discussed. *See* Pancza Dep. at 181. Pancza admitted that upon commencing his employment, he was told by Neil Flint, Vice-President of Remco, to set up appointments with his contacts in the infant toy industry. *See* Pancza Dep. at 96:20–25. (Flint and Pancza shared an office at Remco). Remco asserts that it became apparent to Flint after a few days that Pancza did not know buyers in the toy industry, contrary to his representations to Remco in his interview. *See* Flint Dep. at 34–35 and 81–82. After Flint met with Remco's principals and advised them that Pancza had misrepresented his contacts in the industry, the decision was made to terminate Pancza.[2] *See* Flint Dep. at 29:15–25. In his deposition, Pancza conceded that he did not know numerous buyers in the infant-toy business. *See* Pancza Dep. at 120–121, 125, 128, 137–138, 149–151, 164–167. Thereafter, Remco notified Cook that Pancza had been terminated for misrepresenting his contacts with buyers in the infant-toy industry. *See* Schwanz Dep. at 10:13–19.

## DISCUSSION

### Choice–Of–Law

Remco asserts that New York law applies, since New York has the most significant contacts with the parties and the transaction. Remco points to the facts that it is incorporated in New York, the interviews occurred in New York, Pancza's work was performed in New York and the alleged tortious acts occurred in New York.

Pancza asserts that New Jersey law applies, since he lives in New Jersey and

---

1. Remco's principal Azrak initialed his approval to pay Cook's fee upon receipt of the bill. The bill was ultimately not paid since Pancza was not employed for 90 days.

2. Remco also claims that Pancza was terminated due to his work habits (arriving late and leaving early), the friction that developed between Pancza and Azrak's sons, who were assigned to work in sales with Pancza, and because Pancza was unable to obtain a competitive products catalog. The court does not rely on these factors in reaching its decision.

Cook telephoned him in New Jersey. Pancza also argues that Remco's practice of shipping through the Port of Newark without being licensed to do business in New Jersey was illegal, and that New Jersey's public policy mandate to protect its citizens from acts of foreign corporations illegally conducting business in New Jersey dictates a choice of New Jersey law. Finally, Pancza suggests that New Jersey law should apply because he has applied for unemployment benefits from the State of New Jersey.

■ A federal court must apply the conflict of laws principles of the forum state. *Rohm & Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429 (3d Cir.1982), citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Therefore, New Jersey conflict of laws principles will determine which law governs Pancza's contract and tort claims.

■ *Contract Claim.* The New Jersey Supreme Court has adopted the Restatement standard (significant contacts) to determine which law governs contract claims. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 34, 417 A.2d 488 (1980). As articulated by the Third Circuit in *Rohm & Haas*, New Jersey looks to the jurisdiction "having the most significant relation and closest contacts with the occurrence and the parties". *Rohm & Haas*, 689 F.2d at 429.

In applying this standard to the insurance contract in *State Farm*, the New Jersey Supreme Court balanced the factors which it considered inherent in the significant relationship test (the domicile of the parties, the place of contracting, the place of performance, and the location of the subject matter) against the reasonable expectations of the contracting parties and the governmental and legislative interests of each interested state.

The Court noted that the prior choice of law rule, place of contracting, still had

meaning, since the rule furnishes certainty and consistency in the choice of law. *Id.* 84 N.J. at 37, 417 A.2d 488. However, the Court cautioned against granting this rule controlling effect, holding that a court should also consider the relationship of each state with the parties and the transaction. *Id.*

The following facts are undisputed and constitute significant contacts with New York: Pancza's oral employment contract was formed in New York; the contract was to be performed in New York; the alleged breach of contract occurred in New York; and the defendants are incorporated in, and conduct their business from, New York. New Jersey's only contact is Pancza's residence in New Jersey.[3] While Pancza points to receiving telephone calls from Cook in New Jersey as another New Jersey contact, this is only because of his residence in New Jersey. With respect to an employment contract, New York has far more significant contacts than New Jersey. Thus, in accordance with New Jersey's choice-of-law rule governing contract claims, New York has the most significant relation and closest contacts with Pancza's employment and breach of contract claim. Therefore, New York law applies to Pancza's breach of contract claim.

■ *Tort Claims.* In tort cases, New Jersey has adopted a governmental-interest analysis in choice-of-law questions. *Veazey v. Doremus*, 103 N.J. 244, 248, 510 A.2d 1187 (1986); *Barco Auto Leasing Corp. v. Holt*, 228 N.J.Super. 77, 548 A.2d 1161 (App.Div.1988). The court must determine the state which has the greatest interest in applying its law to the particular issue. The first step involves determining whether there is a conflict in the law of the interested states. This analysis is performed on an issue-by-issue basis. *Veazey*, 103 N.J. at 248, 510 A.2d 1187.

If a conflict exists, the court must identify the governmental policies underlying the law of each state, and how they are affected by each state's contacts with the

3. Remco's shipping practices are not a contact with this "occurrence and the parties". *Rohm &* *Haas*, 689 F.2d at 429.

case and the parties. If a state's contacts are unrelated to the policies underlying the law, then the state lacks an interest in applying its law. *Veazey,* 103 N.J. at 248, 510 A.2d 1187. The qualitative nature of the contacts is the touchstone for deciding which law applies. *Id.*

There is conflict between New Jersey law and New York law as to the issues in this case. New York presumes an at-will employment relationship absent an explicit agreement, and precludes claims for wrongful discharge couched in terms of tortious infliction of emotional distress. *Buffolino v. Long Island Sav. Bank, FSB,* 126 A.D.2d 508, 510 N.Y.S.2d 628, 630 (App.Div.1987). The *Buffolino* court stated that a plaintiff could not "evade" the at-will contract rule by claiming tortious infliction of emotional distress. *Id.* New Jersey permits a claim of intentional infliction of emotional distress arising out of an employment context for outrageous conduct, and permits a cause of action for negligent infliction of emotional distress where it is reasonably foreseeable that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons. A tortious interference with contract claim under New York law requires a plaintiff to establish intentional and improper interference with a contract with a third party. Intentional interference with contract or with future contractual relations is actionable in New Jersey, even for at-will employees. In New Jersey and New York, an employer has qualified immunity for defamatory statements made in the course of recommendations. *Rogozinski v. Airstream by Angell,* 152 N.J.Super. 133, 154, 377 A.2d 807 (Law Div.1977); *Payne v. Kathryn Beich & Nestle,* 697 F.Supp. 612, 615 (E.D.N.Y.1988). Thus, New Jersey law concerning Pancza's emotional distress and to a lesser extent concerning interference with contract claims conflicts with New York law.

Pursuant to *Veazey,* the next step is identification of the governmental policies underlying the law of each state and how those policies are affected by each state's contacts with the litigation and the parties. In *Veazey,* a Florida plaintiff sued his wife and the other driver for personal injuries sustained in an automobile accident which occurred in New Jersey. In applying the governmental interest test, the New Jersey Supreme Court reviewed the governmental policies behind each state's law. Florida provided interspousal immunity, the purpose of which was to foster marital harmony. *Id.* 103 N.J. at 249, 510 A.2d 1187. New Jersey's interest was highway safety. The court noted that application of interspousal immunity would not affect New Jersey's interest in highway safety. *Id.*

Next, the court examined the contacts of each state to the cause of action. Florida's contacts were directly related to interspousal immunity, since the couple were domiciled in Florida. *Id.* at 251, 510 A.2d 1187. New Jersey's contacts were as the forum state, and as the situs of the accident, which were unrelated to the issue of immunity. *Id.* at 250, 510 A.2d 1187. Therefore, the court concluded that Florida law governed the tort action.

In this action, application of New Jersey law would clearly undercut New York's limitations on an employee's ability to sue for tortious conduct relating to discharge from employment. New York has an interest in governing employment relations, as does New Jersey. However, New Jersey's interest in compensating tort victims generally does not outweigh New York's specific interest in governing its employment relations, especially in light of the fact that New York has the relevant contacts to the employment relation and the alleged tort emanating therefrom. New York is the situs of the alleged tort, the situs of the employment and the state of incorporation and situs of the defendant-employer. New Jersey's only contact is as the domicile of the plaintiff, the alleged victim of the tort. Therefore, I conclude that New York has the "greatest interest" in applying its law to the issues involved in Pancza's tort claims and New York tort law will be applied.[4]

---

**4.** On the facts of this case, Pancza's position

would require a New York employer to treat

## SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of an issue of material fact and its entitlement to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). This burden may be "discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "show that there is a genuine issue of fact for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on the allegations in its pleadings, but must set forth specific facts to establish a genuine issue for trial. *Fed. R.Civ.P.* 56(e).

## BREACH OF EMPLOYMENT CONTRACT

■ In Count One of his complaint, Pancza alleges that he was discharged without just cause and in breach of an express or implied employment contract. It is undisputed that no written contract exists. Rather, Pancza bases his entire position on a conversation which allegedly occurred during his interview with Ezra Hamway and Marvin Azrak. Pancza claims that they stated "[a]s long as you performed well, you would always have a job with this company". *See* Pancza Dep. at 179–180.

Remco argues that this conversation cannot form the basis for a contract terminable only for "just cause", since Pancza was aware that his employment would be reviewed after 30 days, thereby affording Remco the right to terminate Pancza at that time. *See* Pancza Dep. at 181. Moreover, Remco asserts that the alleged statement is legally insufficient, under New York law, to establish a "just cause" contract.

New York resident employees and New Jersey resident employees differently, a result which seems clearly unwarranted given New York's

Absent an agreement fixing a specified duration, New York law presumes an employment-at-will relationship. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). An at-will employee is terminable at any time, for any reason or no reason at all. *Id. Accord, Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 234 (S.D.N.Y.1989). Pancza must establish the existence of an express agreement which limited Remco's ability to discharge him for any reason or no reason.

Vague assurances of long-term employment are insufficient to meet the "express limitation" requirement under New York law, or to transform at-will employment into a long-term employment contract. *Kelly,* 717 F.Supp. at 234. In *Kelly,* the court held that an employer's statement that good employees would have jobs with the company was insufficient, as a matter of law, to create an express employment contract, or to limit the company's right to terminate its at-will employees. *Id.* (citations omitted.)

The New York Court of Appeals recognizes an express limitation on an employer's right to discharge an at-will employee. *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). In *Weiner,* no fixed term of employment existed, but McGraw had assured the plaintiff during his interview that the firm's policy was to discharge only for just cause. In addition, the plaintiff signed an employment application which specifically referred to this policy. Finally, McGraw's personnel policy and procedure manual stated that employees would be dismissed "for just and sufficient cause only".

The court found consideration to support an employment contract with termination only for just cause. *Id.* at 197, 443 N.E.2d at 445. The court found the following factors to be determinative:

1. McGraw's inducement of the plaintiff by assurance of discharge only for cause;

clear predominance as to contacts with the employment relationship.

2. this assurance was incorporated into the employment application;

3. the plaintiff had rejected other offers of employment in reliance on this assurance;

4. the plaintiff had been instructed by his supervisors to strictly adhere to the personnel manual when recommending the termination of his subordinates, since the firm had a policy of discharge only for just cause. The plaintiff was told that failure to follow the policy could subject McGraw to litigation.

*Weiner*, 457 N.Y.S.2d at 198, 443 N.E.2d at 446.

In *Murphy*, the New York Court of Appeals further elaborated on the showing necessary to come under the protection of *Weiner*. A plaintiff must provide an "appropriate evidentiary showing" of an express limitation on an employer's right to terminate an at-will employee which is contained in the employment contract or in an employee handbook or personnel policy and procedure manual. *Murphy*, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. Since the plaintiff in *Murphy* failed to provide evidence that such an express limitation existed in an employee handbook or personnel policy manual, the court dismissed the plaintiff's breach of contract claim for failure to state a cause of action.[5] *Id. Accord Diskin v. Consolidated Edison Co.*, 135 A.D.2d 775, 522 N.Y.S.2d 888 (App.Div.1987), *appeal denied*, 72 N.Y.2d 802, 530 N.Y.S.2d 554, 526 N.E.2d 45 (1988) (no enforceable contract was created by an employer's alleged oral promise to discharge only for cause, absent the factors set out in *Weiner*); *Buffolino*, 510 N.Y.S.2d at 630; *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 520 N.Y.S.2d 764, 766 (App.Div.1987) (plaintiff failed to demonstrate, under *Weiner*, an express limitation on the employer's right to discharge in employee manuals, or reliance).

Pancza conceded that the term of his employment was never discussed, nor were the bases for termination ever raised by either party. *See* Pancza Dep. at 88–90 and 179–181. As the court noted in *Diskin*:

> The plaintiff's breach of contract cause of action in effect rests on little more than alleged oral assurances by upper management personnel that he would be discharged for cause. Those assurances are insufficient to bring this case within the limits of *Weiner*. (citations omitted).

*Diskin*, 522 N.Y.S.2d at 890.

Pancza did not rely on express company policies establishing "just cause" termination set forth in company manuals and thus cannot bring himself within the ambit of *Weiner*. *See* Pancza Dep. at 90:9–13. Under the aforementioned case law, the statement by Remco's owners is insufficient as a matter of law to create an express contract limiting Remco's right to discharge at will. Therefore, summary judgment will be granted on the breach of contract claim.[6]

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

New York does not permit a claim for breach of a covenant of good faith and fair dealing in termination of an at-will employment relationship. *Murphy*, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. *Accord, Kelly*, 717 F.Supp. at 234–35. Since the court has determined that Pancza was an at-will employee, summary judgment will be granted on this claim.

## FRAUD

Pancza asserts that Remco fraudulently induced him to leave his former employer. New York law precludes a cause of action for fraud which relates to an alleged breach of an employment contract.

---

5. The court notes that the *Murphy* Court did not require the plaintiff to make an evidentiary showing on a 12(b)(6) motion to dismiss. Rather, the Court of Appeals merely noted that the plaintiff had not alleged or provided evidence of an express limitation on the employee's unfettered right to terminate him to bring him within the protection of *Weiner*.

6. Remco argues that it had just cause to terminate Pancza's employment since he misrepresented his contacts in the infant-toy industry to obtain employment. I need not address this argument.

Rather, the proper cause of action is for breach of contract. *Dalton*, 520 N.Y.S.2d at 766. *See also Chase v. United Hospital*, 60 A.D.2d 558, 559, 400 N.Y.S.2d 343, 344 (App.Div.1977). Therefore, summary judgment will be granted on the fraud claim.

## PROMISSORY ESTOPPEL

■ In *Dalton*, the court held that promises surrounding an employment relationship are insufficient to state a cause of action for promissory estoppel. The court stated:

[t]he fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.

*Dalton*, 520 N.Y.S.2d at 766.

Moreover, to establish promissory estoppel, New York law requires: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance; and 3) resultant injury therefrom. *Kelly*, 717 F.Supp. at 235–36. As in *Kelly*, general assurances of longterm employment do not establish promissory estoppel. *Id.* at 236.

Therefore, Pancza's allegations that Remco promised him lifetime employment and lured him away from his prior employer fail to state a cause of action for promissory estoppel, and summary judgment will be granted on this claim.

## DEFAMATION

■ Pancza bases his defamation claim on the statements made by Remco to Cook concerning the reasons for Pancza's termination. Remco asserts that those statements are entitled to a qualified privilege under New York law, since it had a duty to inform Cook of Pancza's misrepresentations.

A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.

*Shapiro v. Health Insurance Plan*, 7 N.Y.2d 56, 60, 194 N.Y.S.2d 509, 512, 163 N.E.2d 333, 335 (1959) (citations omitted); *Payne v. Kathryn Beich & Nestle*, 697 F.Supp. 612, 615 (E.D.N.Y.1988). Where the facts are undisputed, the court determines whether a qualified privilege applies as a matter of law. *O'Neil v. Peekskill Faculty Assoc.*, 120 A.D.2d 36, 507 N.Y.S.2d 173, 178 (App.Div.1986).

To overcome a qualified privilege, a plaintiff must establish that the defendant acted with actual malice, i.e., with ill will or culpable recklessness. *Shapiro*, 194 N.Y.S.2d at 513, 163 N.E.2d at 336. Mere allegations of falsity are insufficient to establish an inference of malice to justify sending the question to a jury. *Id.* The burden is on the plaintiff in opposing summary judgment to demonstrate the existence of a genuine issue of fact by showing that defendant's statements were motivated by actual malice. *Kasachkoff v. New York*, 107 A.D.2d 130, 485 N.Y.S.2d 992, 996 (App. Div.1985), *aff'd*, 68 N.Y.2d 654, 505 N.Y.S.2d 67, 496 N.E.2d 226 (1986). This burden is not met by "surmise, conjecture or suspicion ... or unsubstantiated allegations or assertions." *Id.* (citations omitted). In *Kasachkoff*, statements by an employer concerning an employee's drunkenness, made in the course of a performance evaluation, were held to be entitled to a qualified privilege, since the plaintiff failed to overcome the privilege by showing that the statements were made with actual malice. Thus, the plaintiff's defamation claim was dismissed. *Id.*

It is undisputed that Remco told Cook that it terminated Pancza because he misrepresented his contacts in the industry. *See* Schwanz Dep. at 10:13–19. Remco asserts that it informed Cook pursuant to a duty to report the performance of a candidate offered by Cook, and to inform Cook why Remco would not pay its placement fee. As the employment agency which had

initially recommended Pancza to Remco, Cook had an interest in learning Remco's reasons for terminating his employment. Therefore, the court concludes that Remco is entitled to a qualified privilege as to its communications to Cook.

■ To overcome this privilege, Pancza must establish that Remco acted with actual malice, ill will or spite. *Shapiro,* 194 N.Y.S.2d at 513, 163 N.E.2d at 336; *Payne,* 697 F.Supp. at 715. Pancza denies that Remco fired him because of his lack of contacts, but suggests that Remco fired him to avoid paying Cook's fee and to obtain his marketing plan. Pancza thereby implies that Remco lied to Cook. However, Pancza offers no evidence that there were other reasons for his termination which made Remco's communication to Cook false and defamatory. There are only bare allegations of ill will, spite or actual malice. In fact, Pancza admitted that he did not know why he was terminated beyond what he was told by Schwanz. *See* Pancza Dep. at 216–217. Moreover, the record demonstrates that Remco was prepared to pay Cook's fee. *See* Paris Dep. at 49–52. As noted *supra,* mere allegations of falsity are insufficient to survive a summary judgment motion in the absence of some evidence of actual malice. *Shapiro,* 194 N.Y. S.2d 513, 163 N.E.2d at 336; *Kasachkoff,* 485 N.Y.S.2d at 996. Therefore, Pancza has not met his burden of establishing that a genuine issue of fact exists on the issue of malice to overcome Remco's qualified privilege, and summary judgment will be granted on Pancza's defamation claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff brings a claim for intentional infliction of emotional distress based upon the alleged falsity of Remco's stated reasons for his discharge. Plaintiff alleges that Remco terminated him to avoid payment of Cook's fee and to obtain his marketing plan. As noted *supra,* Pancza refers to no facts in the record to support these allegations.

■ New York law precludes a claim for tortious infliction of emotional distress relating to wrongful discharge of an at-will employee, absent an express limitation on the employer's right to discharge. *Murphy,* 461 N.Y.S.2d at 237, 448 N.E.2d at 91. In *Buffolino,* the court stated that the plaintiff "cannot evade or subvert the aforementioned 'at will' contract rule by recasting the claim in terms of a tortious infliction of emotional distress by the defendant". *Buffolino,* 510 N.Y.S.2d at 630. Therefore, as an at-will employee, Pancza cannot sue for tortious infliction of emotional distress.

■ Moreover, the tort of intentional infliction of emotional distress requires extreme, outrageous conduct intolerable in a civilized society. *Murphy,* 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Pancza provides no facts to support his claim of severe emotional distress, intent to inflict such distress, or extreme, outrageous and intolerable behavior on the part of Remco.

For the aforementioned reasons, summary judgment will be granted on Pancza's claim for intentional infliction of emotional distress.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ As noted *supra,* an at-will employee cannot sue for tortious infliction of emotional distress relating to his wrongful discharge. *Murphy,* 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Therefore, Pancza cannot sue for negligent infliction of emotional distress.

■ Assuming *arguendo* that Pancza could bring such a claim, he fails to establish the necessary elements. Under New York law, to make out a claim for negligent infliction of emotional distress, a plaintiff must demonstrate that the defendant breached a special duty owed to plaintiff which exposed the plaintiff to an unreasonable risk of bodily injury or death. *Bovsun v. Sanperi,* 61 N.Y.2d 219, 231, 473 N.Y.S.2d 357, 362, 461 N.E.2d 843, 848 (1984); *Green v. Leibowitz,* 118 A.D.2d 756, 500 N.Y.S.2d 146 (App.Div.1986) (plaintiff failed to establish conduct by the defendant which endangered his physical safety to support a claim of negligent infliction of

emotional distress in a legal malpractice suit). Pancza alleges no facts to establish that Remco's termination endangered his physical safety.

As noted in *Kelly*, while every corporation has a duty to act in good faith in its employment practices, not every "adverse employment decision" gives rise to a claim of negligent infliction of emotional distress. *Kelly*, 717 F.Supp. at 235.

## TORTIOUS INTERFERENCE WITH CONTRACT

In Count Three of his complaint, Pancza alleges that Remco tortiously interfered with his contractual relationship with his former employer, Marcal Paper Mills, Inc. In his reply brief, Pancza also alleges that Remco tortiously interfered with his right to obtain future employment through its alleged false statements to Cook.

■ The New York Court of Appeals has adopted the definition of tortious interference with contract set forth in the Restatement (Second) of Torts § 766 (1977):

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631, 406 N.E.2d 445, 448 (1980) (breach of exclusive distributorship contract). The facts of this case do not support a finding that Remco intentionally induced a third person, i.e. Marcal, not to perform its employment contract with Pancza, so as to constitute tortious interference with contract under the Restatement.

Pancza had at-will employment with Marcal. *See* Pancza Dep. at 34:1–4. The New York Court of Appeals has held that tortious interference with at-will employment is treated the same as interference with prospective contractual relations. *Guard–Life*, 428 N.Y.S.2d at 633, 406 N.E.2d at 449. Under *Guard–Life*, mere persuasion

to leave present employment is not actionable. *Id.* at 636, 406 N.E.2d at 452. Therefore, summary judgment will be granted on Pancza's claim of tortious interference with his employment with Marcal.

■ In his reply brief, Pancza alleges that Remco tortiously interfered with Pancza's prospective contractual relations. While Pancza did not raise this claim in his complaint, amendments to a complaint are freely granted. Therefore, the court will deal with this claim.

■ To establish interference with prospective contractual relations under New York law, a plaintiff must demonstrate that the means employed were "wrongful". *Guard–Life*, 428 N.Y.S.2d at 636, 406 N.E.2d at 452. Wrongful conduct includes a fraudulent representation, a breach of fiduciary duty, or threats. *Id.* "Mere knowing persuasion" is insufficient to state a cause of action. *Id.* Thus, in *Midtown Candy Co. v. Helmsley–Spear, Inc.*, 160 A.D.2d 484, 554 N.Y.S.2d 149, 150 (App. Div.1990), the court dismissed the plaintiff's claim of interference with prospective contractual relations for failure to plead or raise a triable issue concerning the requisite "malicious, fraudulent or deceitful" conduct by the defendant.

A plaintiff must also show that the defendant wrongfully interfered with a contract for the *sole* purpose of harming the plaintiff, or that he committed an independent tort toward a third party. *Lerman v. Medical Assoc. of Woodhull, P.C.*, 160 A.D.2d 838, 554 N.Y.S.2d 272, 273 (App. Div.1990). Pancza's claim for tortious interference with prospective contractual relations must fail, since he has not adduced facts to show, pursuant to *Lerman*, that Remco's acts were done solely to cause him harm. Nor has Pancza adduced any facts to establish that Remco's statement to Cook was fraudulent or malicious, beyond his mere allegation of the falsity of the statement. Thus, summary judgment will be granted on Pancza's claim for tortious interference with prospective contractual relations.

## LOSS OF CONSORTIUM

In light of the summary judgment on all other claims, the court must dismiss this derivative claim as well.